# EXHIBIT A

| STATE OF TENNESSEE<br>30th JUDICIAL DISTRICT<br>CHANCERY COURT | **SUMMONS**** | DOCKET NUMBER<br>CH- 26 1062-3 |
|---|---|---|

| Plaintiff | Defendant |
|---|---|
| DARANA HYBRID, INC. | CTC PROPERTY LLC, and MZX TECH LLC |

TO: (NAME AND ADDRESS OF DEFENDANT)

CTC PROPERTY LLC
By Serving Registered Agent:
United Agent Group, Inc.
5865 Ridgeway Center Pkwy., Suite 395
Memphis, TN 38120

Method of Service:

- ☐ Shelby County Sheriff
- ☑ Private Process Server
- ☐ Out of County Sheriff*
- ☐ Secretary of State*
- ☐ Comm. Of Insurance*
- ☐ Certified Mail
- ☐ Other

*Attach Required Fees

You are summoned to defend a civil action filed against you in the Chancery Court of Shelby County, Tennessee. Your defense to this action must be made within thirty (30) days from the date this summons is served upon you. You must file your defense with the Clerk of the Court and send a copy to the Plaintiff/Plaintiff's attorney at the address listed below. If you fail to defend this action within thirty (30) days of service, judgment by default may be rendered against you for the relief sought in the complaint. Questions regarding this summons and the attached documents should be addressed to the Attorney/Plaintiff listed below.

| | |
|---|---|
| Attorney for Plaintiff or Plaintiff if filing Pro Se:<br>(Name, address & telephone number)<br>Jeremy G. Alpert, Glankler Brown, PLLC<br>6000 Poplar Avenue, Suite 400<br>Memphis, TN 38119<br>(901) 525-1322 | ISSUED 3 of August, 20 26<br><br>W. Aaron Hall, Clerk and Master<br>By: ______<br>Deputy Clerk & Master<br>140 Adams, Room 308 Memphis, TN 38103 |
| TO THE SHERIFF:<br>______<br>______ | Came to hand<br>______ day of ______, 20 ___<br><br>Sheriff |

**CERTIFICATION (IF APPLICABLE)**

| | |
|---|---|
| I, W. Aaron Hall, Clerk & Master of the Chancery Court in the State of Tennessee, Shelby County, do certify this to be a true and correct copy of the original summons issued in this case. | **W. Aaron Hall, Clerk & Master**<br>By: ______<br>D. C. & M. |

**Submit one original and one copy for each defendant to be served.

For Americans with Disabilities Act (ADA) assistance **only**, please call Shelby County ADA Coordinator at (901) 222-2334
For questions regarding scheduling or filing, please contact Chancery Court at (901) 222-3900.

**Notice of Personal Property Exemption:**

TO THE DEFENDANT(S):

Tennessee law provides a ten thousand dollar ($10,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Please state docket number on list.

## RETURN OF SERVICE OF SUMMONS

I hereby certify that I **HAVE** served the within summons:

By delivering on the 4th day of August, 2026 at 12:58 am/(pm) a copy of the summons and a copy of the Complaint to the following Defendant ______

at ______

______ By: [signature]

Signature of person accepting service — Sheriff or other authorized person to serve process

## RETURN OF NON-SERVICE OF SUMMONS

I hereby certify that I **HAVE NOT** served the within summons:

To the named defendant ______ because ______

is (are) not to be found in this county after diligent search and inquiry for the following reason(s): ______.

This ______ day of ______, 20 ______

By: Sheriff or other authorized person to serve process

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the ______ day of ______, 20______, I sent, postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case CH-______ to the defendant ______. On the ______ day of ______, 20______, I received the return receipt, which had been signed by ______ on the ______ day of ______, 20______. The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

**Sworn to and subscribed before me on this ______ day of ______, 20______**

Signature of ____ Notary Public or ____ Deputy Court Clerk:

______

My Commission Expires:

Signature of Plaintiff, Plaintiff's attorney or other person authorized by statute to serve process.

______

ATTACH RETURN

RECEIPT HERE

(IF APPLICABLE)

| STATE OF TENNESSEE 30th JUDICIAL DISTRICT CHANCERY COURT | **SUMMONS**** | DOCKET NUMBER CH-26-1062-3 |
|---|---|---|

| Plaintiff | Defendant |
|---|---|
| DARANA HYBRID, INC. | CTC PROPERTY LLC, and MZX TECH LLC |

TO: (NAME AND ADDRESS OF DEFENDANT)

MXZ TECH LLC
By Serving Registered Agent:
United Agent Group, Inc.
5865 Ridgeway Center Pkwy., Suite 395
Memphis, TN 38120

Method of Service:

- ☐ Shelby County Sheriff
- ☑ Private Process Server
- ☐ Out of County Sheriff*
- ☐ Secretary of State*
- ☐ Comm. Of Insurance*
- ☐ Certified Mail
- ☐ Other

*Attach Required Fees

You are summoned to defend a civil action filed against you in the Chancery Court of Shelby County, Tennessee. Your defense to this action must be made within thirty (30) days from the date this summons is served upon you. You must file your defense with the Clerk of the Court and send a copy to the Plaintiff/Plaintiff's attorney at the address listed below. If you fail to defend this action within thirty (30) days of service, judgment by default may be rendered against you for the relief sought in the complaint. Questions regarding this summons and the attached documents should be addressed to the Attorney/Plaintiff listed below.

Attorney for Plaintiff or Plaintiff if filing Pro Se:
(Name, address & telephone number)

Jeremy G. Alpert, Glankler Brown, PLLC
6000 Poplar Avenue, Suite 400
Memphis, TN 38119
(901) 525-1322

ISSUED 03 of August, 2026

W. Aaron Hall, Clerk and Master

By: ______
Deputy Clerk & Master
140 Adams, Room 308 Memphis, TN 38103

TO THE SHERIFF:

Came to hand ______ day of ______, 20 ______

Sheriff

**CERTIFICATION (IF APPLICABLE)**

I, W. Aaron Hall, Clerk & Master of the Chancery Court in the State of Tennessee, Shelby County, do certify this to be a true and correct copy of the original summons issued in this case.

**W. Aaron Hall, Clerk & Master**

By: ______ D. C. & M.

**Submit one original and one copy for each defendant to be served.

For Americans with Disabilities Act (ADA) assistance **only**, please call Shelby County ADA Coordinator at (901) 222-2334.
For questions regarding scheduling or filing, please contact Chancery Court at (901) 222-3900.

**Notice of Personal Property Exemption:**

TO THE DEFENDANT(S):

Tennessee law provides a ten thousand dollar ($10,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Please state docket number on list.

## RETURN OF SERVICE OF SUMMONS

I hereby certify that I **HAVE** served the within summons:

By delivering on the 4th day of August, 2026 at 1:00 am/pm a copy of the summons and a copy of the Complaint to the following Defendant ______

at ______

______ By: ______
Signature of person accepting service Sheriff or other authorized person to serve process

## RETURN OF NON-SERVICE OF SUMMONS

I hereby certify that I **HAVE NOT** served the within summons:

To the named defendant ______ because ______

is (are) not to be found in this county after diligent search and inquiry for the following reason(s): ______.

This ______ day of ______, 20 ______

By: Sheriff or other authorized person to serve process

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the ______ day of ______, 20 ______, I sent, postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case CH- ______ to the defendant ______. On the ______ day of ______, 20 ______, I received the return receipt, which had been signed by ______ on the ______ day of ______, 20 ______. The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

**Sworn to and subscribed before me on this ______ day of**

______, **20** ______.

Signature of ____ Notary Public or ____ Deputy Court Clerk:

______

My Commission Expires:

Signature of Plaintiff, Plaintiff's attorney or other person authorized by statute to serve process.

______

ATTACH RETURN

RECEIPT HERE

(IF APPLICABLE)

IN THE CHANCERY COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

FILED
SHELBY COUNTY
CHANCERY COURT
AUG 3 2026
W. AARON HALL, C & M
TIME:________ BY:________

DARANA HYBRID, INC.,

Plaintiff,

v.

NO. CH-26-1062 Part III
JURY DEMANDED

CTC PROPERTY LLC and
MZX TECH LLC,

Defendants.

**VERIFIED COMPLAINT FOR BREACH OF CONTRACT, UNJUST ENRICHMENT, ATTACHMENT TO ENFORCE MECHANICS' AND MATERIALMEN'S LIEN AND OTHER RELIEF**

Comes Now Plaintiff Darana Hybrid, Inc. ("Darana"), and for its Complaint against Defendants CTC Property LLC ("CTC") and MZX Tech LLC ("MZX") hereby alleges and states the following:

**PARTIES**

1. Darana is a Tennessee corporation with its principal place of business at 903 Belle Avenue, Hamilton, Ohio 45015. Darana Hybrid, Inc. is a Native American owned and operated company providing Industrial Electrical and Mechanical services throughout North America.

2. Upon information and belief, Defendant CTC is a Wyoming limited liability company with its principal place of business at 1450 Page Mill Road, Palo Alto, California 94304. Upon information and belief, CTC has one member, X.AI Corp. X.AI Corp. is a Nevada corporation with its principal place of business at 1450 Page Mill Rd, Palo Alto, California 94304. CTC can be served with process through its registered agent, United Agent Group, Inc. at 5865 Ridgeway Center Pkwy. Suite 395, Memphis, Tennessee 38120.

3. Upon information and belief, Defendant MZX Tech LLC is a Wyoming limited liability company, with its principal place of business at 1450 Page Mill Road, Palo Alto, California 94304. MZX Tech LLC has one member, X.AI Corp. X.AI Corp. is a Nevada corporation with its principal place of business at 1450 Page Mill Rd, Palo Alto, California 94304. MZX can be served with process through its registered agent, United Agent Group, Inc. at 5865 Ridgeway Center Pkwy. Suite 395, Memphis, Tennessee 38120.

## JURISDICTION AND VENUE

4. This Court has personal jurisdiction over each Defendant because each Defendant did business in Shelby County, Tennessee, entered into contracts to be performed in Shelby County, Tennessee with regard to the construction projects that are the subject of this Complaint and/or each Defendant owned the real property in Shelby County, Tennessee that is the subject of this dispute.

5. This Court has subject matter jurisdiction over this controversy because the causes of action alleged arose in Shelby County, Tennessee, and because the case involves the improvement of real property located in Shelby County, Tennessee.

6. This Court is the proper venue for this case because the dispute concerns real property located in Shelby County, Tennessee.

## FACTS

7. On April 15, 2024, Darana entered into a Master Services Agreement ("MSA") with CTC to construct data centers at multiple locations in Tennessee, including: (i) Colossus, 3231 Paul R Lowry Road, Memphis, Tennessee; and (ii) Macrohard, 5420 Tulane Road, Memphis, Tennessee. A true and accurate copy of the MSA is attached hereto as Exhibit "A" and is incorporated herein by reference.

8. Darana provided labor, equipment, material and services in accordance with the MSA (collectively "Construction Services"). Darana began providing Construction Services to the Colossus/Lowry Road jobsite on approximately March 10, 2024, and to the Macrohard/Tulane jobsite on approximately February 27, 2025.

9. On or about June 27, 2025, CTC conveyed the parcel of real property located at 5420 Tulane Road, Memphis, Tennessee to MZX. Upon information and belief, CTC and MZX share common ownership, as both entities are wholly owned subsidiaries of X.AI Corp and both entities list with the Tennessee Secretary of State a principal place of business at 1450 Page Mill Road, Palo Alto, California 94304. This parcel of real property at 5420 Tulane Road is the location where Darana was constructing the data center known as "Macrohard", and at the time of the conveyance of the real property, Darana had already begun to provide Construction Services to improve the real property. Because of the common ownership between MZX and CTC, MZX knew or reasonably should have known that Darana was already in the process of providing these Construction Services to improve this real property which MZX purchased.

10. Pursuant to the MSA, Darana provided labor, goods and construction materials to the real properties located at 3231 Paul R Lowry Road, Memphis, Tennessee and 5420 Tulane Road, Memphis, Tennessee, and Darana caused improvements to be made to both parcels of real property for the benefit of CTC and MZX.

11. Darana properly and timely performed its duties under the MSA at all relevant times, using labor, goods and construction materials to cause improvements to be made to each parcel of real property.

12. Darana invoiced CTC for Darana's services, and CTC paid Darana's invoices until CTC wrongfully terminated Darana on June 23, 2026. CTC's June 23, 2026, letter purports to terminate Darana's services both for CTC and for MZX.

13. CTC made its last payment to Darana on July 2, 2026.

14. Despite Darana's improvements to the parcels of real property and despite Darana's numerous demands, CTC and MZX have failed to pay Darana, and many subcontractors that provided work or services to the parcels of real property pursuant to the MSA. As of the date of this Complaint, the total sum of $136,892,782.78 is justly due, owing and unpaid for such Construction Services provided by Darana and other damages (including, but not limited to, interest, late charges, costs of collection and attorney's fees). The amounts owed to Darana also include amounts owed to subcontractors of Darana. A true and accurate accounting of these accounts receivable is attached hereto as Exhibit "B" and is incorporated herein by reference.

15. Proper and timely demand for payment has been made by Darana, yet CTC and MZX have failed and refused to remit payment.

16. On July 28, 2026, Darana gave notice pursuant to Tenn. Code Ann. § 66-34-101 *et seq.* of its intent to seek relief provided under the Tennessee Prompt Pay Act. A copy of the Prompt Pay Act Notice is attached hereto as Exhibit "C" and is incorporated herein by reference.

17. On July 29, 2026, Darana provided Notice of Non-Payment to MZX and CTC with regard to the property located at 5420 Tulane Road, Memphis, Tennessee. A copy of Darana's Notice of Non-Payment is attached hereto as Exhibit "D" and is incorporated herein by reference.

18. On or about July 30, 2026, Darana recorded a Notice of Mechanic's and Materialmen's Lien with the Shelby County Register of Deeds at Instrument No. 26064556 against

the Colossus project, 3231 Paul R. Lowry Road, in the amount of $18,646,622.43. A copy of Darana's Notice of Lien is attached hereto as Exhibit "E" and is incorporated herein by reference.

19. On or about July 31, 2026, Darana recorded a Notice of Mechanic's and Materialmen's Lien with the Shelby County Register of Deeds at Instrument No. 26064953 against the Macrohard project, 5420 Tulane Road, in the amount of $118,246,160.35. A copy of Darana's Notice of Lien is attached hereto as Exhibit "F" and is incorporated herein by reference.

20. Despite all this, CTC and MZX have failed and/or refused to respond to the notices, mechanic's liens, or pay the amounts due.

**<u>COUNT I - BREACH OF CONTRACT</u>**

21. Darana realleges and incorporates the allegations contained in the paragraphs above as if fully set forth herein.

22. Darana entered into the MSA with CTC to provide Construction Services in connection with the improvements to the properties at 3231 Paul R. Lowry Road and 5420 Tulane Road, both in Shelby County, Tennessee. Darana performed its obligations pursuant to the MSA, but CTC has failed and refused to pay Darana the outstanding balances due to Darana for its work, as well as other contractual damages.

23. As a direct and proximate result of CTC's breach of contract, Darana has sustained actual damages in excess of $136,892,782.78, plus statutory interest, costs, expenses, and reasonable attorney's fees.

**<u>COUNT II – QUANTUM MERUIT/UNJUST ENRICHMENT</u>**

24. Darana realleges and incorporates the allegations contained in the paragraphs above as if fully set forth herein.

25. Darana conferred significant benefit on CTC and MZX by virtue of the Construction Services it provided to CTC and MZX. CTC and MZX were aware of the Construction Services being provided and it would be unjust for CTC and/or MZX to retain the value of these services without compensation.

26. CTC and MZX have benefited, and been unjustly enriched, by virtue of the Construction Services provided by Darana.

27. The reasonable value of the benefit conferred on CTC and MZX is in excess of $136,892,782.78.

28. The benefits conferred on CTC and MZX are at the expense, and to the detriment, of Darana and its subcontractors and material suppliers.

29. CTC and MZX are liable to Darana for unjust enrichment in excess of $136,892,782.78, plus interest.

**COUNT III - PROMPT PAYMENT VIOLATION**

30. Darana realleges and incorporates the allegations contained in the paragraphs above as if fully set forth herein.

31. Tennessee's Prompt Payment Act, Tenn. Code Ann. § 66-34-101 *et. seq.* (the "Act"), requires that project owners pay prime contractors, like Darana, within 30 days of receiving an invoice.

32. CTC and MZX have failed to pay or have refused to pay outstanding invoices in excess of $136,892,782.78 within 30 days of receipt of the invoice.

33. Due to this failure to pay, Darana gave notice under the Act that its invoices remained unpaid, demanded immediate payment, and advised that if payment was not forthcoming that it would seek penalty interest and attorneys' fees under the Act.

34. Nevertheless, CTC and MZX, in bad faith, have still failed and/or refused to pay.

35. As a direct and proximate result of Defendants' violations of the Act, Darana is entitled to all remedies available under Tennessee law, including penalty interest and attorney's fees.

36. Darana has sustained actual damages in excess of $136,892,782.78, and it is entitled to payment from Defendants in excess of that amount, plus interest at 1.5% per month, as well as costs, expenses, and reasonable attorney's fees.

**COUNT IV-ENFORCEMENT OF MECHANIC'S AND MATERIALMEN'S LIENS**

37. Darana realleges and incorporates the allegations contained in the paragraphs above as if fully set forth herein.

38. Darana performed its contractual obligations to provide Construction Services on the parcels of real property at 3231 Paul R. Lowry Road and 5420 Tulane Road, both in Shelby County, Tennessee.

39. The last date that Darana furnished services in connection with the construction and improvement on the properties was June 23, 2026.

40. Giving Defendants all applicable credits, Darana claims and asserts a lien against Defendants' interest in the real property located at 3231 Paul R. Lowry Road in Shelby County, Tennessee in the total amount of $18,646,622.43 pursuant to Tenn. Code Ann. § 66-11-101, *et seq.*, to secure the amounts due to Darana for furnishing labor, goods and construction materials used to improve that property. The property is also more particularly described in the Notice of Mechanic's and Materialmen's Lien filed with the Shelby County Register of Deeds at Instrument No. 26064556. A copy of Darana's Notice of Lien is attached hereto as Exhibit "E".

41. Giving Defendants all applicable credits, Darana claims and asserts a lien against Defendants' interest in the real property located at 5420 Tulane Road in Shelby County, Tennessee in the total amount of $118,246,160.35 pursuant to Tenn. Code Ann. § 66-11-101, *et seq.*, to secure the amounts due to Darana for furnishing labor, goods and construction materials used to improve that property. This property is also more particularly described in the Notice of Mechanic's and Materialmen's Lien filed with the Shelby County Register of Deeds at Instrument No. 26064953. A copy of Darana's Notice of Lien is attached hereto as Exhibit "F".

42. Darana's liens against Defendants' interest in the real property located at 3231 Paul R. Lowry Road and 5420 Tulane Road include the buildings, structures, and improvements to the land, and it exists to secure the indebtedness owed to Darana, plus interest, attorney's fees, collection costs and recording fees.

43. Plaintiff requests foreclosure on its liens and sale of the Defendants' interests in the parcels of real property and improvements in satisfaction of its liens.

## PRAYER FOR RELIEF

**WHEREFORE**, Darana prays for relief against CTC and MZX as follows:

1. That process issue and Defendants be made to appear and answer this Complaint;
2. That the Court empanel a jury to try this action;
3. That Plaintiff be awarded a judgment for compensatory damages, both economic and non-economic, for Defendants' breach of contract, unjust enrichment, and Prompt Pay Act violations, in an amount to be proven at trial, but in excess of $136,892,782.78, plus reasonable attorney's fees, statutory interest, costs, and expenses;

4. That to secure payment of all amounts due and owing to Plaintiffs, a Mechanics' and Materialmen's Lien pursuant to the provisions of Tenn. Code Ann. § 66-11-101, *et seq.*, in the amount of $18,646,622.43, be declared in favor of Plaintiff upon the Defendants' interest in the Property located at 3231 Paul R. Lowry Road in Shelby County, Tennessee.
5. That to secure payment of all amounts due and owing to Plaintiffs, a Mechanics' and Materialmen's Lien pursuant to the provisions of Tenn. Code Ann. § 66-11-101, *et seq.*, in the amount of $118,246,160.35, be declared in favor of Plaintiff upon the Defendants' interest in the Property located at 5420 Tulane Road in Shelby County, Tennessee;
6. That to enforce the liens upon Defendants' interest in the parcels of real property at issue in this lawsuit, an attachment issue and be levied against the Defendants' interest in each of the properties;
7. That to enforce the liens, the Defendants' interest in the parcels of real property at 3231 Paul R. Lowry Road and 5420 Tulane Road, both in Shelby County, Tennessee, be sold on such terms as the Court deems equitable and in bar of all equity of redemption, and that the proceeds of the sale be applied towards satisfaction of the judgment and discharge of said liens;
8. That Plaintiff be awarded the costs of this cause, including all discretionary costs and attorneys' fees;
9. That Plaintiff be awarded pre-judgment and post-judgment interest on all amounts awarded; and

10. That Plaintiff be awarded such other, further relief, both general and specific, to which it may be entitled.

**THIS IS THE FIRST APPLICATION FOR AN ATTACHMENT OR OTHER EXTRAORDINARY RELIEF IN THIS CAUSE.**

Respectfully submitted,

**GLANKLER BROWN, PLLC**

By:____________________________

Jeremy G. Alpert (#19277)
Ross E. Webster (#24784)
S.T. Rayburn (#41634)
6000 Poplar Avenue, Suite 400
Memphis, Tennessee 38119
(901) 525-1322
jalpert@glankler.com
rwebster@glankler.com
srayburn@glankler.com

and

Marc A. Sanchez (pro hac vice pending)
Bradley N. Ouambo (pro hac vice pending)
**FRANTZ WARD LLP**
200 Public Square, Suite 3000
Cleveland, Ohio 44114
(216) 515-1660
msanchez@frantzward.com
bouambo@frantzward.com

*Attorneys for Plaintiff, Darana Hybrid, Inc.*

**STATE OF OHIO:**
**COUNTY OF BUTLER:**

I, Brandy Petrak, make oath that I have read the foregoing Verified Complaint and that the same is true of my own knowledge, except to the matters stated to be upon information and belief, and as to those matters I believe to be true I hereby execute this Verified Complaint as attestation of the truth of this Verified Complaint.

Executed this 3rd day of August, 2026.

**DARANA HYBRID, INC.**

By: ______________________
**Brandy Petrak**

**STATE OF OHIO:**
**COUNTY OF BUTLER:**

Before me, notary public of the state and county aforesaid, personally appeared Brandy Petrak, with whom I am personally acquainted (or proved to be on the basis of satisfactory evidence), and who, upon oath, acknowledged herself to be the Senior Accountant of Darana Hybrid, Inc. and that she, individually, and as an authorized representative thereof, executed the foregoing document instrument for the purpose therein contained, by signing her name.

**WITNESS** my hand and seal at office on this the 3rd day of August, 2026.

______________________
Notary Public

My Commission Expires:

May 7th 2029

:

**ATTACHMENT BOND**

We, Darana Hybrid, Inc., as principal, and Glankler Brown, PLLC, as surety, acknowledge ourselves indebted to the Defendants in the sum of $1,000.00 to be void if Plaintiff Darana Hybrid, Inc., which has filed a complaint in the Chancery Court of Shelby County, Tennessee in the total amount of $136,892,782.78, and praying for an attachment therein against the real property of the Defendants as described in the complaint for the total sum of $136,892,782.78 together with additional damages, interest and costs and obtains in the same upon execution of this bond, shall prosecute the said attachment with effect or in the case of failure, pay the Defendants all costs which may be adjudged against the complainant and also all damages Defendants may sustain by the wrongful suing out of this attachment.

Witness our hand and seals this 3rd day of August 2026.

**DARANA HYBRID, INC.**

By: ______________________
Brandy Petrak
*Senior Accountant –*
*Darana Hybrid, Inc.*

**GLANKLER BROWN, PLLC, as surety**

By: ______________________
Jeremy G. Alpert, Member

Docusign Envelope ID: FDC70B0A-A56F-4127-B392-9EFAFFC5F7C3

# MASTER SERVICES AGREEMENT

**between**

**CTC PROPERTY LLC**
**("Company")**

**and**

**DARANA HYBRID, INC.**
**("Contractor")**

**for Project Colossus, Memphis, TN**
**(the "Project")**

**dated**

**April 15, 2024**

**EXHIBIT A**

# Master Services Agreement – Basic Information Sheet

**Company:**
CTC Property LLC, a Wyoming limited liability company
PO Box 491727
Los Angeles, CA 90049

**Contractor:**
Darana Hybrid, Inc., a Tennessee corporation
903 Belle Avenue
Hamilton, OH 45015

**Services to be Performed:** See Statement(s) of Work.

**Project where Services will be performed:**
Project Colossus
3231 Riverport Road
Memphis, TN 30189

Additions and deletions to the Project sites and Services will be accomplished by Statements of Work.

**Term of Agreement:**
This Agreement shall be for a period commencing on the 15th day of April, 2024 (the "Effective Date") and ending on the date of termination of the all Statement(s) of Work ("SOWs") entered into pursuant to this Agreement.

**Price:** See Statement(s) of Work.

**Invoice Information:** See Statement(s) of Work

# MASTER SERVICES AGREEMENT

This Master Services Agreement ("Agreement") is made as of the Effective Date set forth in the Basic Information Sheet between CTC Property LLC ("Company") and Darana Hybrid, Inc. ("Contractor").

1. **MASTER AGREEMENT.** This Agreement provides the general terms and conditions applicable to Company's purchase of certain Services from Contractor for Project Colossus, located in Memphis, Tennessee (the "Project"). This Agreement may be amended by one or more Statements of Work ("SOWs"). In the event of any conflict between this Agreement and the terms of any SOW, the order of precedence is: (i) the SOW; (ii) this Agreement (including the Basic Information Sheet). All mutually agreed and executed SOWs are hereby incorporated into this Agreement. However, in the event that Contractor's proposal is appended to this Agreement or to any SOW, any of Contractor's terms and conditions of service contained therein are expressly disclaimed and are not incorporated into this Agreement. All defined terms are defined in Article 10 below.

2. **SERVICES.**

2.1 Contractor shall perform the Services in accordance with the degree of care and skill ordinarily exercised by members of the same profession currently performing the same or similar services under the same or similar circumstances. Contractor shall make available to Company the full benefit of the judgment, experience and advice of the members of Contractor's organization and staff with respect to the policies to be pursued and decisions to be made in connection with the Services. Contractor shall provide experienced personnel, all of whom shall perform the Services under this Agreement in a professional and workmanlike manner in accordance with accepted industry standards. In connection with the performance of the Agreement, Contractor will comply with all Laws, to the extent applicable to Contractor, including, but not limited to, Laws concerning worker's compensation, social security, unemployment, tax withholding and reporting, hours of labor, wages, working conditions, equal opportunity and employment laws, the Fair Labor Standards Act, and the Immigration Reform and Control Act. Contractor shall ensure that all Contractor employees assigned to the Project are authorized to work in the United States in compliance with all federal and state laws and regulations. Contractor agrees to provide Company with reasonable documentation evidencing Contractor's compliance with the foregoing, as well as any other documentation that Company may reasonably request to verify Contractor's compliance with this section.

2.2 Contractor agrees to use reasonable efforts to ensure the continuity of personnel assigned to perform Services under any SOW. When visiting the Project Site, Contractor's personnel shall abide by applicable safety, security and similar work-related policies, procedures, controls and rules communicated to Contractor. Contractor shall comply with any rules and regulations required by Company or any Owner of the Site in connection with any entry onto a Site by Contractor or any of its employees or contractors.

2.3 Nothing in this Section will operate or be construed to limit Contractor's responsibility for the acts or omissions of the Contractor's employees or subcontractors or be construed as joint employment.

2.4 *Subcontractors*. Contractor shall subcontract any portion of Contractor's Services under this Agreement only upon Company's prior written consent, which consent will not be unreasonably withheld, conditioned, or delayed. Contractor shall be responsible for the acts and omissions of its employees and subcontractors. Contracts between the Contractor and subcontractors and suppliers shall require each subcontractor and supplier to assume all obligations and responsibilities that the Contractor assumes in this Agreement, including but not limited to obligations and responsibilities relating to insurance, indemnification, and confidentiality. In the event Contractor performs Services through subcontractors or purchases material and equipment from suppliers, Contractor's markup shall be stated in a SOW, and shall not exceed ten percent (10%).

2.5 Contractor, at no additional charge, shall provide all of its own equipment and personnel necessary to perform all of the Services in accordance with the Agreement.

2.6 Risk of loss or damage to equipment or property pertaining to the Services or any property of the Company in the custody of Contractor shall remain with Contractor; however, once the Company unconditionally accepts the Services, Company shall have the risk of loss or damage to any property or equipment that has been delivered to Company as part of the Services.

2.7 Contractor shall comply with any rules and regulations required by the Company or any Owner of a Site in connection with any entry onto a Site by Contractor or any of its employees or contractors.

3. **TERM.** This Agreement shall have a term as set forth in the Master Services Agreement – Basic Information Sheet, unless sooner terminated or renewed pursuant to the terms of this Agreement or as extended by an active SOW.

3.1. The date of commencement of the Work under an SOW shall be as set forth in the applicable SOW.

3.2. The Contract Time for the Work shall be measured from the date of commencement, and shall be adjusted as stated in Section 3.5. By executing an SOW, the Contractor confirms that the Contract Time is a reasonable period for performing the Work.

3.3. The Contractor shall achieve Substantial Completion of the Work under an SOW as set forth in the applicable SOW. Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the SOW so that the Company can occupy or utilize the Work for its intended use.

3.4 *Liquidated Damages*. Time is of the essence of this Agreement. The Contractor acknowledges that the Company is entitled to full and beneficial occupancy and use of the completed Work following expiration of the Contract Time, and that the Company requires completion of the Work within the Contract Time. The Contractor further acknowledges and agrees that:

If the Work is not completed as scheduled, Company will sustain extensive damages and serious loss as a result of such delay. The exact amount of the Company's damages will be

incapable or difficult of estimation. The Company and Contractor, therefore, mutually agree that if Contractor fails to achieve Substantial Completion on or before the Required Substantial Completion Date set forth in a SOW, as adjusted in accordance with the Agreement, the Contractor shall owe to Company delay liquidated damages in the amount set forth in the SOW. The delay liquidated damages stated therein are mutually agreed to be a reasonable forecast of just compensation for the damages the Company will incur as a result of delayed Substantial Completion of the Work. The Contractor and the Company agree that these delay liquidated damages provisions are intended only to address the Company's damages resulting from the Contractor's failure to achieve the Required Substantial Completion Date, and not to compensate the Company for any other damages it may incur as a result of any breach or breaches by the Contractor of its obligations under this Agreement. The parties hereto and the Contractor's surety, if any, agree not to challenge the enforceability of the delay liquidated damages provisions contained herein, particularly since such provisions have been mutually negotiated by the parties to be an accurate pre-estimation of the damages that would be incurred by the Company. If, however, the liquidated damages provisions under this Agreement are subsequently determined by a court or arbitrator of competent jurisdiction to be unenforceable under applicable law, then the Company shall be entitled to recover its actual damages arising out of Contractor's failure to complete the Work within the Contract Time, which may include, without limitation, increased costs of construction, increased expenses, costs associated with acceleration of the Work or portions thereof, lost revenues, lost profits, direct and consequential losses arising from delay in the use of the Project (or any part thereof) by the Company and other direct and consequential damages resulting from the failure of the Contractor to complete the Work in the time required, and may exceed the negotiated liquidated damages.

3.5 *Delays*.

3.5.1 If the Contractor is delayed at any time in the commencement or progress of the critical path of the Work by (1) changes ordered in the Work; (2) by Force Majeure as defined and documented in accordance with Section 3.5.1(a) or adverse weather conditions documented in accordance with Section 3.5.1(b); or (3) by other causes that the Contractor asserts, and the Company determines, justify delay, then the Contract Time may be extended for such reasonable time as the Company may determine. Notwithstanding anything herein to the contrary, no extension of the Contract Time shall be permitted for a delay in the commencement or progress of the Work unless the Contractor (a) provides notice of such delay to the Company within seven days of the event giving rise to the delay and otherwise in full compliance with the requirements of this Section 3.5 and (b) demonstrates that such delay impacts the critical path of the Work; and provided, further, that in no event shall the Contract Time be extended beyond the extent that such delay affects the critical path of the Work. No extension of time shall be granted to the Contractor to the extent that, notwithstanding the existence of any circumstance beyond the Contractor's control, delay would have resulted from any event due to a concurrent unexcused delay of the Contractor. Except as set forth in Section 3.5.4, no delay or extension of time shall result in any increased payments to the Contractor.

(a) "Force Majeure" shall mean and be limited to abnormal and unexpected weather conditions as set forth in Section 3.5.1(b), and unforeseeable catastrophic events such as wars, civil disturbances, embargoes, terrorist attacks, revolts, insurrections, or

sabotage; provided that such act or event (1) delays the Company's or the Contractor's performance of its obligations under the Agreement or a SOW, (2) is beyond the reasonable control of the party claiming Force Majeure and not due to its fault or negligence, and (3) could not have been prevented or avoided by the party claiming Force Majeure through the exercise of due diligence. For the avoidance of doubt, "Force Majeure" shall not include any of the following: (i) economic hardship, (ii) changes in market conditions, (iii) late delivery or failure of materials, equipment, or supplies except as may be caused by a separate event of Force Majeure, (iv) local or direct strikes, or other similar labor actions, (v) unavailability of subcontractors or suppliers, or (vi) nonperformance or delay by the Contractor or its subcontractors or suppliers.

(b) The definition of "Force Majeure" includes abnormal and unexpected adverse weather conditions including catastrophic storms or floods, lightning, tornadoes, hurricanes, and earthquakes. The Contractor shall not be entitled to any extension of time due to adverse weather conditions unless the number of adverse weather days in any given calendar month exceeds the historic averages as maintained by the National Oceanic and Atmospheric Administration. "Adverse weather conditions" is defined as the occurrence of one or more of the following conditions which prevents interior construction activity or access to the site within 24 hours: (1) precipitation (rain, snow, or ice) in excess of one-tenth inch (0.10") liquid measure, (2) temperatures which do not rise above 32 degrees F by 10:00 a.m., (3) temperatures which do not rise above that specified for the day's construction activity by 10:00 a.m. if any is specified, (4) sustained wind in excess of 25 mph, or (5) standing snow in excess of one inch (1.00"). Weather conditions including precipitation (rain, snow, hail) amounts and times at the jobsite, activities and durations affected, shall be recorded on a daily basis in the Superintendent's daily report and submitted to the Company on a weekly basis.

3.5.2 Except as provided in Section 3.5.4, any claims by the Contractor for damages for delay (including disruptions or impacts based on delay), however asserted or denominated, and whether based on a single event or multiple events or cumulative impacts, are hereby waived and released and the Contractor covenants to assert no such claim. For such delays, and only those delays not caused in whole or part by the Contractor, the Contractor's sole remedy shall be a time extension. The Contractor shall not be entitled to any compensation (including acceleration expenses) or time extension for delays caused by the Contractor or those for whom the Contractor is responsible.

3.5.3 If, in the opinion of the Company, the Contractor is responsible for any delays in the time or sequence of the performance of its Work, the Contractor shall, on its own initiative or at the Company's written directive, employ such additional forces, obtain such additional equipment, employ such additional supervision, pay such additional overtime wages, take other actions that may be necessary, and use such priority freight as may be required to bring its Work back on schedule, all of which shall be at the Contractor's own cost and expense. In no event shall such costs to bring the Work back on schedule cause the compensation payable to Contractor to be adjusted or exceeded. This section shall not be construed to require that the Company give the Contractor a written notice to perform any of the acts listed in the section, and the parties agree that the Company's failure to give such written notice to the Contractor shall not in any way relieve the Contractor's obligation to

perform its Work so as to achieve Substantial Completion of the Work by the Substantial Completion Date.

3.5.4 The Contractor agrees that any claim seeking additional compensation for any delay, impact or acceleration to the Work must show, at a minimum, that the Company (or a separate contractor) expressly delayed or accelerated Work on the critical path for construction, due to no fault of the Contractor or others for whom the Contractor is responsible ("compensable delay or acceleration"). Compensable delay or acceleration shall be limited to the actual, direct Project expenses that are incurred purely and exclusively as a result of the acceleration or impact, including only additional cost of the Contractor's and the Contractor's subcontractors' personnel, the Contractor's representative, superintendents or foremen, other management, and field office expenses. In no event shall the Contractor be entitled to extended home office overhead, general and administrative expenses (as that phrase is commonly understood in keeping with generally accepted accounting principles), or the cost of any personnel or other expense except to the extent such costs or expenses are directly related to the project and incurred on a daily or continuous basis. In no event shall the Contractor be entitled to more than its proven, actual, out of pocket expenses, as documented by time and material records to be maintained by the Contractor on a daily basis and signed for by the Company, and in no event shall the Contractor be entitled to any compensation for an alleged delay if the delay claim is ultimately rejected. No costs incurred or calculated in any other manner shall be recoverable. The Contractor expressly waives all claims for impact, acceleration, lost productivity, or similar damages, except as allowed under this paragraph.

4. **FEES AND PAYMENT TERMS.** The applicable SOW shall set forth the fees and charges that Company shall be obligated to pay for or in connection with the Services. Contractor shall be responsible for all taxes related to the provision of Services. Any Work performed by the Contractor unless pursuant to a SOW shall have been done solely at the Contractor's risk, and the Contractor hereby waives and shall not make any claims, including those for unjust enrichment or *quantum meruit*, based on performance of Work that has not been authorized in writing by Company, notwithstanding any course of dealing between the parties or any implied acceptance of any Work by Company.

4.1 Contractor will invoice Company on the schedule stated in the applicable SOW pursuant to an invoice with an attached schedule of values showing percentages complete of each portion of Contractor's Services on a form acceptable to Company. Company will pay all invoiced amounts not reasonably disputed by Company within forty-five (45) days after Company's receipt of the applicable invoice. Company shall have the right to withhold any payments, or portions thereof, otherwise due for (i) unsatisfactory progress or performance of the Services, (ii) Contractor's failure to satisfy any payment obligations in relation to the Services; (iii) any damages or set-offs incurred by Company with respect to the applicable SOW, or (iv) to offset payments previously made for unsatisfactory Services against future amounts owing under an applicable SOW, until such Services are performed to Company's satisfaction.

4.2. With each invoice, Contractor shall provide unconditional lien releases and claim waivers, in such form as Company may reasonably require, from Contractor and all subcontractors and suppliers (of any tier), for all work for which Contractor shall have received

payment at least ten (10) days prior to submission of the current invoice. Concurrently with the submission to Company of the Final Application for Payment, Contractor shall submit to Company fully executed lien and claim waivers, in such form as Company may reasonably require, covering any and all mechanic's liens, stop notices, equitable liens, and similar rights and claims which could be made by Contractor or any approved subcontractors for any and all services, work, material and expenses provided on the Project. Company may withhold payment on any items set forth in any invoice until proper lien waivers and supporting documentation requested by Company are received. No payment hereunder shall constitute acceptance or approval of any services.

4.2.1 If any claim or lien is filed by one of Contractor's subcontractors or suppliers, Contractor shall cause such lien to be discharged within three (3) days after filing, at Contractor's expense, by: (a) filing the bond required by law; or (b) providing Company with a court order discharging the lien; or (c) providing Company with another form of protection against such lien which is acceptable to Company, in its sole discretion. Upon Contractor's failure to comply herewith, Company may proceed to discharge such lien at Contractor's expense. Contractor shall indemnify and hold harmless Company for all costs, including but not limited to attorneys' fees, regarding any such liens. Contractor's obligation to bond off all liens of its subcontractors and suppliers is absolute and unconditional, and Contractor's failure to bond off any lien shall be deemed a material breach and default of this Agreement.

4.3 Contractor shall deliver and assign to Company before receiving final payment for the performance of Services hereunder, copies of any and all tests, warranties, guarantees, and manuals relating to Contractor's services. The acceptance by Contractor of such final payment shall constitute a full and complete release of Company from any and all claims, demands, and causes of action whatsoever which the Contractor, its successors or assigns, have or may have against Company under this Agreement. Payment of such final payment shall not be deemed to be a release of the Contractor from its duties and obligations under this Agreement and Contractor's professional standards for diligence and care that survive such payment.

## 5. REPRESENTATIONS AND WARRANTIES AND INDEMNIFICATION.

5.1 Each Party represents and warrants that: (i) it is a legal entity duly organized, validly existing and in good standing; (ii) it has all requisite corporate power and authority to execute, deliver, and perform its obligations hereunder; (iii) it is duly authorized or qualified to do business and is in good standing in the State where the Project is located; (iv) it will comply with all Laws and regulations applicable to the performance of its obligations hereunder and will obtain all applicable permits and licenses required of it in connection with its obligations hereunder; (v) it will avoid deceptive, misleading or unethical practices that could adversely affect the performance of the other Party's obligations under this Agreement or damage the reputation of the other Party; (vi) it is not a party to any other agreement with a third party, the performance of which is reasonably likely to affect adversely its ability or the ability of the other Party to perform fully its respective obligations hereunder; (vii) its performance of its obligations under this Agreement will not violate any other agreement between such Party and any third party; and (viii) it will comply with all terms and conditions of this Agreement.

5.2 Contractor represents and warrants that before it executes a SOW: (i) Contractor has carefully studied and compared the drawings, specifications, and other requirements for the Services, (ii) Contractor deems its inspection of the Project site, review of the drawings, specifications, and other requirements for the Services, and review of the conditions and limitations under which the Services will be performed to be a thorough investigation, (iii) Contractor has observed no defects, no discrepancies, and no problems in what it inspected and/or reviewed with respect to performing the Services, and (iv) Contractor can complete the Services by the Required Substantial Completion Date.

5.3 To the fullest extent permitted by Law, Contractor, at its own expense, will indemnify, defend and hold harmless Company, its subsidiaries, affiliates (including but not limited to X.AI Corp.) and assignees, and each of their respective directors, officers, shareholders, partners, members, managers, employees and agents (individually a "Company Indemnified Party"), from and against any and all losses, liabilities, costs, damages, debts or expenses, including court costs and reasonable attorneys' fees incurred by any Company Indemnified Party, in connection with or arising from any third party claim, demand, lawsuit, or investigation arising out of or relating to the performance of the Services, but only to the extent caused by (i) any breach of or default under this Agreement or any violation of applicable Laws by Contractor or any subcontractor or any other person for whom Contractor is responsible, (ii) the fault, willful misconduct, or negligent acts or omissions of Contractor or its affiliates, consultants, any subcontractor or supplier, or their respective agents or employees; (iii) any lien or claim of lien filed by any subcontractor or supplier against Company or any funds held by Company, the Site, Project, or the real property where the Project is located, provided that Contractor shall be under no obligation to indemnify under this subsection (iii) if Company has not made payments of all undisputed amounts owed under this Agreement; (iv) any personal injury, death, sickness, or property damage caused by Contractor or any subcontractor or supplier, or any employee, officer, agent, representative, or consultant of any of them. This indemnity obligation shall not be construed to negate, or abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist under the law. Contractor's obligations herein shall not be limited, waived, or excused by the payment of any damages, benefits, expenses, or compensation under any employee death or disability statute, including worker's compensation, employer's liability, employee benefit, or other such act. The foregoing indemnification does not apply to claims against a Company Indemnified Party arising out of the sole negligence of that Company Indemnified Party.

5.4 Without the prior written consent of the Company Indemnified Party, which consent shall not be unreasonably withheld, Contractor shall not settle any claims or actions in a manner that would require any action or forbearance from action by any Company Indemnified Party.

## 6. INSURANCE REQUIREMENTS.

6.1 Contractor shall obtain, pay for, and maintain the following insurance during the Term of this Agreement and for not less than three (3) years thereafter, including (without limitation) any year in which a SOW is in effect, with insurers of recognized responsibility authorized to do business in the State where the Project is located, assigned an A.M. Best

rating of no less than A-/VII. The insurance shall include the minimum coverages and limits set forth below:

6.1.1 Commercial General Liability Insurance, including blanket contractual liability, premises and operations, property damage, products/completed operations (for three years after occupancy), independent contractor, and personal injury coverages, with a limit of not less than $1,000,000 for each occurrence, and $2,000,000 in the aggregate;

6.1.2 Commercial Automobile Liability Insurance, including coverage for liability arising out of the use of owned, non-owned, leased or hired automobiles, for both bodily injury and property damage in accordance with applicable Laws, with a limit of not less than $1,000,000 combined single limit per occurrence;

6.1.3 Worker's Compensation Insurance, covering all of Contractor's employees, in amounts and otherwise on terms and conditions as required by Law and imposed by worker's compensation, occupational disease or similar laws, including the Longshore and Harbor Workers' Act, the Federal Employers' Liability and the Jones Act, if applicable;

6.1.4 Employers' Liability at limits of $1,000,000 – disease each employee, $1,000,000 – disease policy limit and $1,000,000 – each accident;

6.1.5 Professional Liability Insurance – not applicable; and

6.1.6 Umbrella Excess Insurance, with limits of no less than $10,000,000 with coverage in excess of Sections 6.1.1, 6.1.2 and 6.1.4.

6.2 *Additional Insured/Endorsed*. The insurance referenced in Sections 6.1.1 & 6.1.2 and 6.1.4, 6.1.5, and 6.1.6 above shall be endorsed to include the following:

6.2.1 Company, Company's affiliates (including but not limited to X.AI Corp.), Owner, and Company's lenders or lending institutions, including the directors, officers, affiliates, agents and employees of each ("Additional Insureds") shall be named Additional Insured under ISO Form CG2010(11/85) or its equivalent;

6.2.2 The coverage afforded Additional Insureds shall be primary as respects any claims, losses, damages, expenses or liabilities arising out of, relating to in any way, or incident to the Services or any activities of Contractor and all subcontractors at the Site, regardless whether instituted against Company alone or jointly with Contractor, any subcontractors, or others, and noncontributing with any other insurance maintained by Additional Insureds;

6.2.3 Each policy shall be endorsed with a waiver of subrogation in favor of Additional Insureds; and

6.2.4 Additional Insureds shall be given thirty (30) days advance written notice of cancellation, non-renewal or modification of the policy by the insurer, except in the event of non-payment of the policy in which event (10) days notice for cancellation shall be provided.

6.3 *Additional Insurance Requirements*.

6.3.1 If Contractor fails to comply with its obligations as specified in this Article 6, Company shall have the right, but not the obligation, to terminate the Agreement for default or to procure the required insurance coverage at Contractor's expense.

6.3.2 Contractor shall furnish Company with copies of any accident report(s) sent to Contractor's insurance carriers covering accidents occurring in connection with or as a result of the performance of the Work. Contractor shall furnish said copies to Company concurrently with providing the reports to its insurers.

6.3.3 Contractor shall notify Company in writing when coverages required herein have been reduced as a result of claim payments, expenses or both.

6.3.4 None of the requirements contained in this Article 6 as to types, limits, or Company's approval of insurance coverage to be maintained by Contractor are intended to and shall not in any manner limit, qualify or quantify the liabilities and obligations assumed by Contractor hereunder, in any other agreement with Company, or as otherwise provided by applicable law.

6.3.5 The above-mentioned insurance policies (except Workers' Compensation) shall contain standard cross-liability provisions.

7. **TERMINATION AND SUSPENSION.**

7.1 *Company's Termination for Convenience*. Company may terminate this Agreement or any SOW, at any time, for its convenience and without cause, without liability. Upon such termination, Contractor shall be paid for Services properly performed through the date Contractor was instructed to cease work on the Project, including overhead and profit for work performed. Company will not be liable to Contractor for any anticipated fees or profits on account of a termination under this Section.

7.2 *Company's Termination for Cause*. In the event Company terminates this Agreement or any SOW as a result of a breach or default by Contractor, Contractor shall remain liable to Company for any and all damages incurred or suffered by Company as a result of such breach or default; and Company may, in addition to any other rights and remedies provided herein, or at law or in equity, withhold and offset any amount otherwise owed to Contractor to the extent reasonably necessary to compensate Company for such damages.

7.3 *Contractor's Termination for Cause*. If Company fails to make payment of undisputed amounts within sixty (60) days of receipt of an invoice, the Contractor may, upon ten (10) additional days' written notice to Company, terminate the applicable SOW and recover from Company payment for work executed, including overhead and profit, costs incurred by reason of such termination, and damages.

7.4 During any period after which notice of termination has been given by Company under this Article 7, Contractor shall continue to fulfill its respective obligations under this

Agreement, unless otherwise prohibited by law, and shall cooperate in the orderly wind-down of the parties' performance of this Agreement.

8. **CONFIDENTIALITY AND INTELLECTUAL PROPERTY RIGHTS.**

8.1 *Confidentiality.*

8.1.1 As part of Contractor's engagement and performance of the Services, Contractor shall have access and contribute to information and materials of a highly sensitive nature (including Confidential Information). Contractor agrees that it and its subcontractors, suppliers, employees, officers and agents shall not (without in each instance obtaining Company's prior written consent) disclose, make commercial or other use of, or give or sell to any person any Confidential Information received directly or indirectly from Company or any affiliate of Company or acquired or developed in the course of this Agreement unless: (i) Contractor is required to do so pursuant to law (and then only after Contractor has given Company prompt written notice of the legal compulsion and provided Company with cooperation in any attempt Company may make to gain a protective order acceptable to Company); (ii) it is rightfully in the possession of Contractor from a source other than Company or an affiliate of Company prior to the time of disclosure of the information to Contractor under this Agreement; (iii) it was in the public domain prior to the time of receipt; (iv) it became part of the public domain after the time of receipt by any means other than an unauthorized act or omission on the part of Contractor; (v) it is supplied to Contractor after the time of receipt without action by a third party who is under no obligation to Company or an affiliate of Company to maintain such information in confidence; or (vi) it was independently developed by Contractor prior to the time of receipt.

8.1.2 Contractor's confidentiality and non-disclosure obligations shall survive the expiration or termination of this Agreement for the longest period permitted by law. All Confidential Information, regardless of form, shall be the property of Company or the applicable affiliate of Company, and shall be returned to Company or the applicable affiliate at the expiration or earlier termination of this Agreement; provided, however, Contractor may, with Company's written consent, be entitled to retain one copy of such Confidential Information for its records, provided that adequate protections continue to remain place to protect such Confidential Information.

8.1.3 Contractor may disclose Confidential Information without the prior written consent of Company only to those directors, officers, employees, subcontractors, suppliers, agents or other representatives of Contractor as need to know such information solely for the purpose of fulfilling Contractor's obligations under this Agreement or any SOW, and Contractor further agrees that (i) all such persons who receive Confidential Information shall be informed of the confidential nature of such information and the requirement that it not be used other than in connection with the fulfillment of its obligations under this Agreement; and (ii) Contractor shall be responsible for any breach of these confidentiality obligations by all such persons.

8.1.4 Each of Company, Contractor, and their respective representatives agree that a breach of Section 8.1 will give rise to irreparable injury to Company for which damages

may not be adequate compensation, and consequently, that Company shall be entitled, in addition to all other remedies available to it at law or equity, to injunctive and other equitable relief to prevent a breach of Section 8.1 and to secure the specific performance of such sections without proving actual damages or posting bond or other security.

8.2 *Use of Trademarks or Trade Names*. Without Company's prior written approval, Contractor shall have no right to use any trademark or trade name of Company or of any affiliate of Company.

8.3 *Ownership of Copyright*. Documents prepared by Contractor are solely for use with respect to the Project referenced in this Agreement. All documents (including drawings, plans and specifications) furnished by Contractor pursuant to this Agreement are the instruments of service to the Project, and Company shall retain all common law, statutory and other reserved rights in such documents, including intellectual property and copyright.

## 9. MISCELLANEOUS PROVISIONS

9.1 *Notice*. Any notice or communication required or permitted to be given hereunder may be delivered by hand, deposited with an overnight courier, sent by e-mail (provided a second copy of such notice is sent within one (1) business day by overnight courier or U.S. Mail certified return receipt requested and postage prepaid), or U.S. Mail registered or certified return receipt requested and postage prepaid, in each case to the address set forth in the Basic Information Sheet or to such other address as may hereafter be furnished in writing by either party to the other party in accordance with this Section. Such notice will be deemed to have been given as of the date it is received.

9.2 *Assignment*. Contractor may not assign, subcontract or transfer part or all of its rights and obligations under this Agreement, or delegate any of its obligations hereunder, without Company's written consent (which may be withheld in Company's sole discretion). Company shall have the right to assign this Agreement without Contractor's consent.

9.3 *Entire Understanding*. This Agreement constitutes the entire understanding and agreement of the parties related to the subject matter hereof and supersedes and replaces any and all prior or contemporaneous discussions, agreements and understandings regarding such subject matter. Purchase Orders between the Parties entered into prior to execution of this Agreement shall be treated as SOWs entered into pursuant to this Agreement. Each SOW includes terms which are in addition to, and not in lieu of, the Agreement, and shall be deemed to be part of this Agreement.

9.4 *Independent Contractor*. In the proposing and performance of any services under this Agreement, Contractor is and shall be an independent contractor with the sole right to supervise, manage, operate, control, and perform the details incident to such services. Nothing contained in this Agreement shall be construed to create a partnership, joint venture, or employer/employee or principal/agent relationship between Company and Contractor.

9.5 *Execution and Counterparts*. This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which together shall constitute one and the same instrument.

9.6 *Modification*. This Agreement may be changed only by a written document signed by authorized representatives of Company and Contractor. No course of dealing or course of conduct shall operate to modify this Agreement.

9.7 *Severability*. If any provision of this Agreement, as applied to either party or to any circumstance, is adjudged by a court or arbitrator to be invalid, illegal or unenforceable, the same will not affect the validity, legality, or enforceability of any other provision of this Agreement. All terms and conditions of this Agreement will be deemed enforceable to the fullest extent permissible under applicable law.

9.8 *Governing Law*. This Agreement will be governed by and construed in accordance with the laws of the State where the Project is located.

9.9 *Third Party Beneficiaries*. The provisions of this Agreement and the rights and obligations created hereunder are intended for the sole benefit of Company and Contractor, and do not create any right, claim or benefit on the part of any person not a party to this Agreement. The parties do not intend any provision of this Agreement to be enforceable by or to benefit any third party.

9.10 *General*. Contractor shall not issue any recordation or publication relating to this Agreement, except as may be required by Law. If either party retains an attorney to enforce the terms of this Agreement or to collect money due hereunder, the prevailing party shall be entitled to recover reasonable attorneys' fees, court costs and other related expenses incurred in connection therewith. The terms and provisions contained herein that by their sense and context are intended to survive the performance thereof by the parties shall so survive termination of this Agreement, including, without limitation, provisions for indemnification and the making of any payments.

9.11 *Time of the Essence*. Time is of the essence with respect to all provisions of this Agreement and SOWs that specify a time for performance; provided, however, that the foregoing shall not be construed to limit or deprive a party of the benefits of any grace or use period allowed in this Agreement.

9.12 *Audit*. All payments received pursuant to this Agreement, and Contractor's Services and workplace area and related offices shall be subject to audit and inspection by Company or any authorized representatives acting on Company's behalf. Contractor shall comply with all reasonable requests by Company to make available books and records necessary to substantiate Contractor's charges and invoices for reimbursement. Contractor shall retain such records for a period of three (3) years from the date of completion of all Services under this Agreement.

9.13 *Non-Waiver*. Failure of by either party to insist upon strict performance by the other party or either party's failure or delay in exercising any rights or remedies provided in this Agreement or by Law shall not be deemed or construed as a waiver of any claims. No waiver by either party of a breach of any provision of this Agreement shall constitute or be construed as a waiver of any other breach or of that provision. No payment or certificate, final or otherwise, nor the approval of any design, shall be construed as (i) an acceptance of defective Services, (ii)

relieving Contractor of its obligations to make good any defects or consequences for which Contractor may be responsible, or (iii) a waiver of any obligations of Contractor under this Agreement. Each party's rights and remedies under this Agreement shall be cumulative and additional to any other or further rights or remedies provided in Law or equity under the Uniform Commercial Code or otherwise. Each party shall retain all rights of legal action in tort under this Agreement on all issues relating to contribution, insurance coverage, and contractual indemnity.

9.14 *Warranty*. Contractor warrants the Services and any materials and equipment supplied to be of good quality and free from defects and deficiencies. In addition to Contractor's general warranty in this Article 9.14, any specific manufacturer's warranty or guarantee shall run directly from the subcontractor, fabricator, or supplier as the case may be, to Company. Contractor shall assist Company in obtaining and enforcing such extended warranties and guarantees. Contractor warrants it shall re-perform, redesign, and/or correct at its expense such of its Services as are defective or deficient due to Contractor's failure to perform said Services in accordance with this Agreement, provided that Company provides notice of such defective or deficient Services within one year of performance of such Services. If, after receipt of timely notification from Company of such deficiency, Contractor fails to promptly make the necessary redesign, corrections, or revisions of any such deficiencies, Company may perform, or cause to be performed, the same at Contractor's sole expense. The Contractor's obligation to correct defective Services herein shall not limit the Contractor's other obligations under the Agreement or any SOW, including but not limited to, its obligations to perform the Services in accordance with the requirements of the Agreement and the SOW, and nothing contained in this Section 9.14 shall be construed to establish a period of limitation with respect to other obligations the Contractor has under the Agreement or any SOW.

9.15 *Waiver of Consequential Damages*. The Contractor and Company waive claims against each other for consequential damages arising out of or relating to this Agreement. This mutual waiver includes claims for losses of use, income, profit (except Contractor's overhead and profit arising directly from the Services), financing, data, business and reputation, and for loss of management or employee productivity or of the services of such persons. This mutual waiver is applicable, without limitation, to all consequential damages due to either Party's termination in accordance with Article 7. Notwithstanding the foregoing, the following damages are excluded from this mutual waiver: (i) liquidated damages as allowed by the Agreement; (ii) damages related to Contractor's indemnification obligation pursuant to Section 5.3; and (iii) damages covered by the Contractor's insurance.

9.16 *Permits and Licenses*. Contractor shall maintain at its sole expense all qualification-related permits and licenses, registrations, qualifications, and other governmental authorizations required by law that are associated with Contractor's performance of the Services.

9.17 *Dispute Resolution*. The parties hereby agree that should litigation be necessary, the forum for said litigation shall be the appropriate court of law located in Memphis, Tennessee.

## 10. DEFINITIONS.

**"Additional Insured"** is defined in Section 6.2.1 of this Agreement.

**"Agreement"** means this Agreement, the general terms and conditions herein and includes the Basic Information Sheet, any SOW, and all other items expressly incorporated herein.

**"Basic Information Sheet"** means the Master Services Agreement – Basic Information Sheet.

**"Company"** is defined in the preamble of this Agreement.

**"Company Indemnified Party"** is defined in Section 5.3 of this Agreement.

**"Company Technology"** is defined in Section 8.10 of this Agreement.

**"Compensable delay or acceleration"** is defined in Section 3.5.4 of this Agreement.

**"Confidential Information"** means all information (whether or not specifically labeled or identified as confidential), in any form or medium, which is disclosed to or learned by Contractor in the performance of this Agreement or any SOW, or acquired directly or indirectly such as in the course of discussions or investigations by Contractor, and which relates to the (a) internal business information of Company or any affiliate of Company (including, without limitation, information relating to strategic and staffing plans and practices, marketing, promotional and sales plans, cost, rate and pricing structures, accountings, financial information and proforma, the financing for the Project); (b) information regarding the Project, including the work to be performed and the scope of the Project; (c) any trade secret, ideas, inventions or other intellectual property of the Company or any affiliate of Company, and (d) any other information identified by Company in writing as confidential or otherwise not to be disclosed.

**"Contractor"** is defined in the preamble of this Agreement.

**"Contract Time"** means the time for performance of Services, which will be established by SOW.

**"Force Majeure"** is defined in Section 3.5.1(a) of this Agreement.

**"Laws"** means rules, regulations, statutes, ordinances, orders and rulings of a government and administrative and regulatory authorities, as well as any rules and regulations imposed by Company or Owner.

**"Owner"** means the owner of a Site.

**"Party"** or **"Parties"** means Company, Contractor, and their respective representatives, agents, employees, officers, directors or contractors, or subcontractors.

**"Project"** is defined in Section 1 of this Agreement.

**"Required Substantial Completion Date"** means the date by which the Work will be substantially complete, which will be established by SOW.

**"Services"** means any services or work, including but not limited to construction services and procurement of materials and equipment, that Contractor provides pursuant to the terms of this Agreement or any SOW.

**"Site"** means any of the buildings and facilities at which Services are provided for the Project. Additions and deletions to the Sites may be accomplished by SOW.

**"SOW"** means any Statement of Work entered into by Company and Contractor.

**"Substantial Completion"** is defined in Section 3.3 of this Agreement.

**"Work"** means any services or work that Contractor provides pursuant to the terms of this Agreement or any SOW.

**IN WITNESS WHEREOF, the parties have entered into this Agreement as of the Effective Date written above.**

| CTC PROPERTY LLC | | DARANA HYBRID, INC. | |
|---|---|---|---|
| Signature: | Signed by: Dan Rowland E23BD9AC69B5472... | Signature: | [signature] |
| Name: | Dan Rowland | Name: | DARRYL CUTTELL |
| Title: | Authorized Representative | Title: | CEO. |
| Date: | 8/5/2024 | Date: | 05/02/2024 |

Docusign Envelope ID: CDB3E067-BE06-4A81-A057-28B5C369EED6

**AMENDMENT NUMBER ONE TO MASTER SERVICES AGREEMENT**

This Amendment Number 1 (the "Amendment") is effective as of the date last signed below (the "Amendment Effective Date") and is made by and between CTC Property LLC ("Company") and Darana Hybrid, Inc. ("Contractor"). This Amendment modifies the Master Services Agreement effective April 15, 2024 (the "Agreement") made by and between Company and Contractor. Company and Contractor may each be individually referred to herein as a "Party" and collectively as the "Parties". Any capitalized term used in this Amendment not otherwise defined shall have the meaning ascribed to such term in the Agreement.

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to amend the Agreement only as follows:

1. The Section titled "Project where Services will be performed" in the Basic Information Sheet in the MSA is hereby deleted in its entirety and replaced with the following:

   **"Project where Services will be performed:**

   1. Project Colossus ("Colossus")
      3231 Paul R. Lowry Rd.
      Memphis, TN, 38109

   2. Project Tulane ("Tulane")
      5420, 5414 & 5408 Tulane Rd.,
      Memphis, TN 38109

      Additions and deletions to the Projects and Services may accomplished by Statements of Work and/or Purchase Orders."

2. The Section titled "Price" in the Basic Information Sheet in the Agreement is hereby deleted in its entirety and replaced with the following:

   " **Price:**

   **1.** Project Colossus. For all electrical and mechanical Services performed by Contractor for the Colossus Project, Company will pay Contractor at the rate of $245 per hour, unless a lower rate is set forth in a Purchase Order accepted by Contractor.

   **2.** Project Tulane. Commencing on the Amendment 1 Effective Date, for all electrical and mechanical Services performed by Contractor for the Tulane Project, Company will pay Contractor at the rate of $200 per hour, unless a lower rate is set forth in a Purchase Order accepted by Contractor.

   **3.** Equity Incentive. Additionally, subject to Contractor's compliance with the terms of the Agreement, including, without limitation, **Section 2.8** (Exclusivity), the sole owner of Contractor's business, Darryl Cuttell ("Owner") may be eligible for additional compensation in the form of an equity incentive as described in Exhibit A (Equity Incentive)."

3. **Section 1** (Master Agreement) is hereby deleted in its entirety and replaced with the following:

"1. **MASTER AGREEMENT.** This Agreement provides the general terms and conditions applicable to Company's purchase of certain Services from Contractor for the Project Sites located in Memphis, Tennessee, or as otherwise agreed by the Parties (the "Projects"). In the event of any conflict between this Agreement and the terms of any SOW, the order of precedence is: (i) this Agreement (including the Basic Information Sheet), as amended; (ii) the SOW. All mutually agreed and executed SOWs are hereby incorporated into this Agreement. However, in the event that Contractor's proposal is appended to this Agreement or to any SOW, any of Contractor's terms and conditions of service contained therein are expressly disclaimed and are not incorporated into this Agreement. All defined terms are defined in **Section 10** below."

4. The Agreement is hereby modified to include the below provision as a new **Section 2.8** (Exclusivity):

"2.8. Exclusivity. During the Exclusivity Period, Contractor represents, warrants and covenants to Company that:

(a) Contractor (and its affiliates as applicable) will exclusively work for Company for performing Services related to Data Center Infrastructure Center Projects; and

(b) Contractor (and its affiliates as applicable) will not under any circumstances, perform any services, assist or in any way participate, in any Data Center Infrastructure Projects anywhere, for any third party, including without limitation, Company's Competitors."

5. The Agreement is hereby modified to include a new Exhibit A (Equity Incentive) to the Agreement which is attached to this Amendment as Schedule 1 and incorporated by reference.

6. **Section 6.1.6** of the MSA is hereby deleted in its entirety and replaced with the following:

"6.1.6. Umbrella Excess Insurance, with limits of no less than twenty-five million dollars (**US $25,000,000**) with coverage in excess of Section 6.1.1, Section 6.1.2 and Section 6.1.4."

7. **Section 10** (Definitions) of the Agreement is hereby modified to include the new defined terms below:

**"Competitors"** means, without limitation, any third party that is in any way involved in artificial intelligence products and/or data centers. For clarity, and without limitation, **"Competitors"** expressly includes the following companies: OpenAI, Microsoft, Anthropic, Google (Alphabet), DeepMind (Google subsidiary), Meta, DeepSeek, Mistral AI, Cohere, Amazon Web Services (AWS), IBM, Nvidia, Intel Perplexity AI, Digital Realty, Equinix, CoreSite, and any of their related subsidiaries, affiliates, joint ventures or any other entities involved in the provision of artificial intelligence products or Data Center Infrastructure Projects.

**"Data Center Infrastructure Project"** means any project or activity which involves or is related to, the planning, designing, constructing, deploying, and maintaining facilities and systems, including physical structures, power supply and distribution, cooling and environmental controls, security measures and connectivity solutions, that house, support, and manage critical computing resources, networking equipment, and/or data storage to ensure the reliable, efficient, and scalable operation of data centers for modern digital services and technologies.

**"Exclusivity Period"** means the period of time commencing as of the Amendment Effective Date and continuing thereafter for a period of twenty-four (24) months."

8. Except as amended hereunder, all terms of the Agreement remain unmodified and in full force and effect and nothing in the Agreement is modified by this Amendment by implication or otherwise.

9. In the event of a conflict among the terms and conditions of the Agreement and this Amendment, the terms and conditions of this Amendment shall govern to the extent needed to resolve the conflict.

10. This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which together shall constitute one and the same instrument.

**IN WITNESS WHEREOF,** the Parties hereto have caused this Amendment to be executed by their respective authorized representatives and have made it effective as of the Amendment Effective Date.

CTC Property LLC

By: Signed by: Jared Birchall 11C016000E3E474...

Name: Jared Birchall

Title: Corp Secretary

Date: 4/11/2025

Darana Hybrid, Inc.

By: DocuSigned by: Darryl Cuttel A15A4A30C1B0425...

Name: Darryl Cuttel

Title: CEO

Date: 4/12/2025

**SCHEDULE 1:**

[New Exhibit A (Equity Incentive) to the Agreement]

**EXHIBIT A: Equity Incentive**

1. Equity Incentive. In addition to the fees for Services performed by Contractor for Company, and for the exclusivity commitments made by Contractor to Company in the Agreement during the Exclusivity Period, Company and its ultimate parent company x.AI Holdings Corp ("X.AI") have agreed to make additional compensation available to Owner, in the total aggregate value of $28,500,000 in the form of an equity incentive determined in accordance with and subject to the terms and conditions of this Exhibit.

2. Agreement to Grant RSU Awards. Subject to the approval by X.AI's Board of Directors (the "Board"), Owner will be granted up to three (3) separate awards upon and subject to Contractor achieving each respective milestone set forth in **Section 3** below, each such award of a number of restricted stock units ("RSUs") under the Company's Amended and Restated 2023 Equity Incentive Plan, as may be amended from time to time (the "Plan") having an aggregate value equal to **$9,500,000**, as determined by the Board as of each respective Grant Date (as defined hereinafter) (each an "RSU Award" or "RSU Award #1", "RSU Award #2" and "RSU Award #3", respectively). Owner's receipt of such awards will be subject to X.AI's RSU award agreement. Each RSU entitles Owner to receive one (1) share of X.AI's Series A Common Stock upon vesting subject to the provisions of Section 4 below. For clarity, the RSUs shall be subject to all of the terms and conditions of the Plan.

3. RSU Award Milestones and Grant Date Defined. Each RSU Award shall be granted upon Contractor's achieving the respective Milestone set forth below within 30 days of Contractor's achievement of such Milestone (each, a "Grant Date"):

| **RSU Award** | **Milestones** |
|---|---|
| RSU Award #1 | Milestone for RSU Award #1 shall mean: 110,000 GPUs commissioned at Tulane, as determined by the Board |
| RSU Award #2 | Milestone for RSU Award #2 shall mean: 220,000 GPUs commissioned at Tulane, as determined by the Board |
| RSU Award #3 | Milestone for RSU Award #3 shall mean: 330,000 GPUs commissioned at Tulane, as determined by the Board |

4. Vesting. Subject to the terms and conditions of the Plan, if and to the extent that any RSU Award shall have been granted pursuant to Section 3 above, such RSU Award shall vest upon the expiration of the Exclusivity Period if and only if: (i) Contractor must be in strict compliance with the terms of the Agreement including, without limitation, **Section 2.8** (Exclusivity), and (ii) Contractor must continue the provision of Services for Company until the expiration of the Exclusivity Period. If such vesting conditions shall not be met upon the expiration of the Exclusivity Period, the RSU Awards will be automatically forfeited without any further action.

5. Additional Special Terms. Without in any way limiting any other terms applicable to the RSU Awards, in the event Contractor fails to comply with the terms of the Agreement, including notably the exclusivity commitments in **Section 2.8** (Exclusivity) during the Exclusivity Period, all of Owner's RSUs will be automatically forfeited without any further action, and Owner shall have no rights to any RSUs from Company and/or X.AI, regardless as to whether any of the Milestones have been completed by Contractor, or the RSUs were vested, prior to such failure. Owner is solely responsible for any and all taxes associated with the vesting and release of RSUs.

**AMENDMENT NUMBER TWO TO MASTER SERVICES AGREEMENT**

This Amendment Number 2 (the "Amendment") is effective as of the date last signed below (the "Amendment Effective Date") and is made by and between CTC Property LLC ("Company") and Darana Hybrid, Inc. ("Contractor"). This Amendment modifies the Master Services Agreement effective April 15, 2024, as modified by Amendment Number One (the "Agreement") made by and between Company and Contractor. Company and Contractor may each be individually referred to herein as a "Party" and collectively as the "Parties". Any capitalized term used in this Amendment not otherwise defined shall have the meaning ascribed to such term in the Agreement.

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to amend the Agreement only as follows:

1. Exhibit A (Equity Incentive) in the MSA is hereby deleted in its entirety and replaced with the new Exhibit A which is attached to this Amendment as **Schedule 1**.

2. Except as amended hereunder, all terms of the Agreement remain unmodified and in full force and effect and nothing in the Agreement is modified by this Amendment by implication or otherwise.

3. In the event of a conflict among the terms and conditions of the Agreement and this Amendment, the terms and conditions of this Amendment shall govern to the extent needed to resolve the conflict.

4. This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which together shall constitute one and the same instrument.

**IN WITNESS WHEREOF,** the Parties hereto have caused this Amendment to be executed by their respective authorized representatives and have made it effective as of the Amendment Effective Date.

CTC Property LLC

By: Signed by: Dan Rowland C09178E6D6AA4E0...

Name: Dan Rowland

Title: Authorized Representative

Date: February 19, 2026

Darana Hybrid, Inc.

By: DocuSigned by: Darryl Cuttell A13A4A30C1B0425...

Name: Darryl Cuttell

Title: CEO

Date: February 19, 2026

Docusign Envelope ID: B4828397-4C26-493E-A658-B9086DCADF13

**SCHEDULE 1:**

[New Exhibit A (Equity Incentive) to the Agreement]

**EXHIBIT A: Equity Incentive**

1. Equity Incentive. In addition to the fees for Services performed by Contractor for Company, and for the exclusivity commitments made by Contractor to Company in the Agreement during the Exclusivity Period, Company and its ultimate parent company x.AI Holdings Corp ("X.AI") have agreed to make additional compensation available to Owner and Contractor's key employee, Rodney Caudill ("Key Employee" with each Owner and Key Employee referred to herein as a "Recipient"), in the total aggregate value of $28,500,000 in the form of an equity incentive determined in accordance with and subject to the terms and conditions of this Exhibit.

2. Agreement to Grant RSU Awards.

2.1. Contractor's Grant RSU Awards. Subject to the approval by X.AI's Board of Directors (the "Board"), Owner will be granted up to two (2) separate awards upon and subject to Contractor achieving each respective milestone set forth in **Section 3** below, each such award of a number of restricted stock units ("RSUs") under the Company's Amended and Restated 2023 Equity Incentive Plan, as may be amended from time to time (the "Plan") having an aggregate value equal to **$9,500,000**, as determined by the Board as of each respective Grant Date (as defined hereinafter) (each an "RSU Award" or "RSU Award #1", and "RSU Award #3", respectively). Owner's receipt of such awards will be subject to X.AI's RSU award agreement. Each RSU entitles Owner to receive one (1) share of X.AI's Series A Common Stock upon vesting subject to the provisions of **Section 4** (Vesting) below. For clarity, the RSUs shall be subject to all of the terms and conditions of the Plan.

2.2. Key Employee Grant RSU Awards. Subject to the approval by the Board, Key Employee will be granted one (1) separate award upon and subject to Contractor achieving the applicable milestone set forth in **Section 3** (RSU Award Milestones and Grant Date Defined) below, such award of a number of RSUs under the Plan having an aggregate value equal to $9,500,000, as determined by the Board as of each respective Grant Date (as defined hereinafter) ("RSU Award #2"). Key Employee's receipt of such award will be subject to X.AI's RSU award agreement. Each RSU entitles Key Employee to receive one (1) share of X.AI's Series A Common Stock upon vesting subject to the provisions of **Section 4** (Vesting below) below. For clarity, the RSUs shall be subject to all of the terms and conditions of the Plan.

3. RSU Award Milestones and Grant Date Defined. Each RSU Award shall be granted upon Contractor's achieving the respective Milestone set forth below within thirty (30) days of Contractor's achievement of such Milestone (each, a "Grant Date"):

| RSU Award | Milestones | Recipient |
| --- | --- | --- |
| RSU Award #1 | Milestone for RSU Award #1 shall mean: 110,000 GPUs commissioned at Tulane, as determined by the Board. | Owner<br>(Darryl Cuttell) |
| RSU Award #2 | Milestone for RSU Award #2 shall mean: 220,000 GPUs commissioned at Tulane, as determined by the Board. | Key Employee<br>(Rodney Caudill) |
| RSU Award #3 | Milestone for RSU Award #3 shall mean: 330,000 GPUs commissioned at Tulane, as determined by the Board. | Owner<br>(Darryl Cuttell) |

4. Vesting. Subject to the terms and conditions of the Plan, if and to the extent that any RSU Award shall have been granted pursuant to **Section 3** (RSU Award Milestones and Grant Date Defined) above, such RSU Award shall vest upon the expiration of the Exclusivity Period if and only if: (i) Recipient is in strict compliance with the terms of the Agreement including, without limitation, **Section 2.8** (Exclusivity), and (ii) Recipient continued the provision of Services for Company until the expiration of the Exclusivity Period. If such vesting conditions shall not be met by a Recipient upon the expiration of the Exclusivity Period, the RSU Awards for such Recipient, and only such RSU Awards for such Recipient, will be automatically forfeited without any further action.

5. Additional Special Terms. Without in any way limiting any other terms applicable to the RSU Awards, in the event a Recipient fails to comply with the terms of the Agreement, including notably the exclusivity commitments in **Section 2.8** (Exclusivity) during the Exclusivity Period, all of such Recipient's RSUs, and only such RSUs held by such Recipient, will be automatically forfeited without any further action, and such Recipient shall have no rights to any RSUs from Company and/or X.AI, regardless as to whether any of the Milestones have been completed by Contractor, or the RSUs were vested, prior to such failure. Owner and Key Employee are each solely responsible for any and all taxes associated with the vesting and release of RSUs.

**ACKNOWLEDGED AND AGREED:**

Signed by:
By: Rodney Caudill
0AEA99640C2B47B...

Rodney Caudill, individually

Date: February 19, 2026

CTC Property LLC ~MZX Tech, LLC
Statement of TN Projects

| Job Number | Site Name | Scope | Address | Amount Due |
|---|---|---|---|---|
| 24-235 | Colossus | Electrical | 3231 Paul R Lowry Rd, Memphis, TN 38109 | 17,660,316.11 |
| 24-236 | Colossus | Mechanical | 3231 Paul R Lowry Rd, Memphis, TN 38109 | 986,306.32 |
| 25-200 | Macrohard | Electrical | 5420 Tulane Rd, Memphis, TN 38109 | 43,711,467.07 |
| 25-201 | Macrohard | Mechanical | 5420 Tulane Rd, Memphis, TN 38109 | 61,005,548.16 |
| 25-202 | Macrohard | Civil/Concrete | 5420 Tulane Rd, Memphis, TN 38109 | 5,659,183.10 |
| 25-203 | Macrohard | Rental Equipment | 5420 Tulane Rd, Memphis, TN 38109 | 3,418,969.57 |
| 25-204 | Macrohard | Facilities | 5420 Tulane Rd, Memphis, TN 38109 | 4,450,992.45 |
| | | | | 136,892,782.78 |

Darana Hybrid Inc.
903 Belle Ave
Hamilton, OH 45015

**EXHIBIT B**

9:52 AM

08/03/26

Accrual Basis

# Darana Hybrid Inc

## Invoices for CTC Property LLC / MZX Tech LLC:24-235(E) Colossusx - Memphis, TN

All Transactions

| Num | Date | Due Date | Aging | Amount | Open Balance |
|---|---|---|---|---|---|
| 24-235368 | 04/07/2026 | 05/07/2026 | 88 | 639,565.00 | 639,565.00 |
| 24-235371 | 04/14/2026 | 05/14/2026 | 81 | 2,146.09 | 2,146.09 |
| 24-235372 | 04/14/2026 | 05/14/2026 | 81 | 333,615.00 | 333,615.00 |
| 24-235373 | 04/20/2026 | 05/20/2026 | 75 | 5,020.20 | 5,020.20 |
| 24-235374 | 04/20/2026 | 05/20/2026 | 75 | 218.53 | 218.53 |
| 24-235375 | 04/20/2026 | 05/20/2026 | 75 | 84,995.00 | 84,995.00 |
| 24-235376 | 04/28/2026 | 05/28/2026 | 67 | 123,057.50 | 123,057.50 |
| 24-235377 | 05/06/2026 | 06/05/2026 | 59 | 101,720.00 | 101,720.00 |
| 24-235378 | 05/14/2026 | 06/13/2026 | 51 | 14,719.75 | 14,719.75 |
| 24-235379 | 05/14/2026 | 06/13/2026 | 51 | 255,157.50 | 255,157.50 |
| 24-235380 | 05/14/2026 | 06/13/2026 | 51 | 9,717.32 | 9,717.32 |
| 24-235381 | 05/21/2026 | 06/20/2026 | 44 | 261,297.50 | 261,297.50 |
| 24-235382 | 05/21/2026 | 06/20/2026 | 44 | 226,158.36 | 226,158.36 |
| 24-235383 | 05/21/2026 | 06/20/2026 | 44 | 60,007.07 | 60,007.07 |
| 24-235384 | 05/27/2026 | 06/26/2026 | 38 | 22,404.27 | 22,404.27 |
| 24-235385 | 05/27/2026 | 06/26/2026 | 38 | 1,616,262.50 | 1,616,262.50 |
| 24-235386 | 05/27/2026 | 06/26/2026 | 38 | 206,717.73 | 206,717.73 |
| 24-235387 | 06/02/2026 | 07/02/2026 | 32 | 2,137,640.00 | 2,137,640.00 |
| 24-235389 | 06/02/2026 | 07/02/2026 | 32 | 1,652.89 | 1,652.89 |
| 24-235390 | 06/02/2026 | 07/02/2026 | 32 | 355,790.51 | 355,790.51 |
| 24-235391 | 06/09/2026 | 07/09/2026 | 25 | 2,615,870.00 | 2,615,870.00 |
| 24-235392 | 06/09/2026 | 07/09/2026 | 25 | 79,252.53 | 79,252.53 |
| 24-235393 | 06/09/2026 | 07/09/2026 | 25 | 384,356.92 | 384,356.92 |
| 24-235394 | 06/09/2026 | 07/09/2026 | 25 | 553,859.45 | 553,859.45 |
| 24-235395 | 06/09/2026 | 07/09/2026 | 25 | 855,672.03 | 855,672.03 |
| 24-235396 | 06/17/2026 | 07/17/2026 | 17 | 2,559,055.00 | 2,559,055.00 |
| 24-235397 | 06/17/2026 | 07/17/2026 | 17 | 116,241.69 | 116,241.69 |
| 24-235398 | 06/17/2026 | 07/17/2026 | 17 | 1,251,810.36 | 1,251,810.36 |
| 24-235399 | 06/17/2026 | 07/17/2026 | 17 | 11,020.81 | 11,020.81 |
| 24-235400 | 06/23/2026 | 07/23/2026 | 11 | 2,399,937.50 | 2,399,937.50 |
| 24-235401 | 06/23/2026 | 07/23/2026 | 11 | 5,412.17 | 5,412.17 |
| 24-235402R | 06/23/2026 | 07/23/2026 | 11 | 58,231.32 | 58,231.32 |
| 24-235403 | 07/07/2026 | 08/06/2026 | | 285,086.62 | 285,086.62 |
| 24-235404 | 07/07/2026 | 08/06/2026 | | 26,646.99 | 26,646.99 |
| **Total** | | | | **17,660,316.11** | **17,660,316.11** |

9:53 AM
08/09/26
Accrual Basis

## Darana Hybrid Inc
## Invoices for CTC Property LLC / MZX Tech LLC:24-236(M) Colossusx - Memphis, TN
**All Transactions**

| Num | Date | Due Date | Aging | Amount | Open Balance |
|---|---|---|---|---|---|
| 24-236248 | 04/07/2026 | 05/07/2026 | 88 | 46,740.00 | 46,740.00 |
| 24-236250 | 04/14/2026 | 05/14/2026 | 81 | 17,670.00 | 17,670.00 |
| 24-236251 | 04/20/2026 | 05/20/2026 | 75 | 2,759.36 | 2,759.36 |
| 24-236252R | 05/06/2026 | 06/05/2026 | 59 | 229,087.28 | 229,087.28 |
| 24-236254 | 06/02/2026 | 07/02/2026 | 32 | 271,741.08 | 271,741.08 |
| 24-236255 | 06/09/2026 | 07/09/2026 | 25 | 1,822.74 | 1,822.74 |
| 24-236256 | 06/17/2026 | 07/17/2026 | 17 | 4,022.18 | 4,022.18 |
| 24-236257 | 06/23/2026 | 07/23/2026 | 11 | 261,664.68 | 261,664.68 |
| 24-236258 | 07/07/2026 | 08/06/2026 | | 150,799.00 | 150,799.00 |
| **Total** | | | | **986,306.32** | **986,306.32** |

9:53 AM
08/03/26
Accrual Basis

# Darana Hybrid Inc
## Invoices for CTC Property LLC / MZX Tech LLC:25-200(E) Macrohard - Memphis, TN
All Transactions

| Num | Date | Due Date | Aging | Amount | Open Balance |
|---|---|---|---|---|---|
| 25-200273 | 04/07/2026 | 05/07/2026 | 88 | 4,083,850.00 | 4,083,850.00 |
| 25-200275 | 04/14/2026 | 05/14/2026 | 81 | 3,000,402.50 | 3,000,402.50 |
| 25-200276 | 04/20/2026 | 05/20/2026 | 75 | 1,378,322.12 | 1,378,322.12 |
| 25-200277R | 04/21/2026 | 05/21/2026 | 74 | 2,662,890.00 | 2,662,890.00 |
| 25-200278 | 04/27/2026 | 05/27/2026 | 68 | 392,078.10 | 392,078.10 |
| 25-200279 | 04/28/2026 | 05/28/2026 | 67 | 2,536,960.00 | 2,536,960.00 |
| 25-200280 | 05/06/2026 | 06/05/2026 | 59 | 2,502,010.00 | 2,502,010.00 |
| 25-200281 | 05/07/2026 | 06/06/2026 | 58 | 101,230.57 | 101,230.57 |
| 25-200282R | 05/14/2026 | 06/13/2026 | 51 | 1,910,911.23 | 1,910,911.23 |
| 25-200283 | 05/14/2026 | 06/13/2026 | 51 | 2,499,145.00 | 2,499,145.00 |
| 25-200284 | 05/21/2026 | 06/20/2026 | 44 | 2,408,647.50 | 2,408,647.50 |
| 25-200285 | 05/21/2026 | 06/20/2026 | 44 | 142,531.39 | 142,531.39 |
| 25-200286 | 05/27/2026 | 06/26/2026 | 38 | 2,392,002.50 | 2,392,002.50 |
| 25-200287 | 05/27/2026 | 06/26/2026 | 38 | 44,607.61 | 44,607.61 |
| 25-200288 | 06/02/2026 | 07/02/2026 | 32 | 202,918.98 | 202,918.98 |
| 25-200289 | 06/02/2026 | 07/02/2026 | 32 | 2,350,360.00 | 2,350,360.00 |
| 25-200290 | 06/09/2026 | 07/09/2026 | 25 | 2,270,315.00 | 2,270,315.00 |
| 25-200291 | 06/09/2026 | 07/09/2026 | 25 | 855,664.04 | 855,664.04 |
| 25-200292 | 06/17/2026 | 07/17/2026 | 17 | 2,239,597.50 | 2,239,597.50 |
| 25-200293 | 06/17/2026 | 07/17/2026 | 17 | 732,025.37 | 732,025.37 |
| 25-200298 | 06/23/2026 | 07/23/2026 | 11 | 2,181,397.50 | 2,181,397.50 |
| 25-200299 | 06/23/2026 | 07/23/2026 | 11 | 532,873.98 | 532,873.98 |
| 25-200300 | 07/07/2026 | 08/06/2026 | | 6,290,726.18 | 6,290,726.18 |
| **Total** | | | | **43,711,467.07** | **43,711,467.07** |

9:54 AM
08/09/26
Accrual Basis

## Darana Hybrid Inc
# Invoices for CTC Property LLC / MZX Tech LLC:25-201(M) Macrohard - Memphis, TN
### All Transactions

| Num | Date | Due Date | Aging | Amount | Open Balance |
|---|---|---|---|---|---|
| 25-201105 | 04/07/2026 | 05/07/2026 | 88 | 7,304,942.50 | 7,304,942.50 |
| 25-201107 | 04/14/2026 | 05/14/2026 | 81 | 5,613,752.50 | 5,613,752.50 |
| 25-201108 | 04/20/2026 | 05/20/2026 | 75 | 1,343,292.83 | 1,343,292.83 |
| 25-201109 | 04/21/2026 | 05/21/2026 | 74 | 4,502,347.50 | 4,502,347.50 |
| 25-201110 | 04/27/2026 | 05/27/2026 | 68 | 144,442.32 | 144,442.32 |
| 25-201111 | 04/28/2026 | 05/28/2026 | 67 | 4,348,542.50 | 4,348,542.50 |
| 25-201112 | 05/06/2026 | 06/05/2026 | 59 | 4,176,117.50 | 4,176,117.50 |
| 25-201113R | 05/07/2026 | 06/06/2026 | 58 | 454,282.31 | 454,282.31 |
| 25-201114R | 05/14/2026 | 06/13/2026 | 51 | 176,947.52 | 176,947.52 |
| 25-201115 | 05/14/2026 | 06/13/2026 | 51 | 3,843,807.50 | 3,843,807.50 |
| 25-201116 | 05/21/2026 | 06/20/2026 | 44 | 3,947,640.00 | 3,947,640.00 |
| 25-201117 | 05/21/2026 | 06/20/2026 | 44 | 438,327.31 | 438,327.31 |
| 25-201118 | 05/27/2026 | 06/26/2026 | 38 | 4,344,647.50 | 4,344,647.50 |
| 25-201119 | 05/27/2026 | 06/26/2026 | 38 | 89,466.52 | 89,466.52 |
| 25-201120 | 06/02/2026 | 07/02/2026 | 32 | 272,006.69 | 272,006.69 |
| 25-201121 | 06/02/2026 | 07/02/2026 | 32 | 4,387,274.00 | 4,387,274.00 |
| 25-201122 | 06/09/2026 | 07/09/2026 | 25 | 4,381,005.00 | 4,381,005.00 |
| 25-201123R | 06/09/2026 | 07/09/2026 | 25 | 742,568.61 | 742,568.61 |
| 25-201124 | 06/17/2026 | 07/17/2026 | 17 | 4,449,975.00 | 4,449,975.00 |
| 25-201125 | 06/17/2026 | 07/17/2026 | 17 | 1,113,139.38 | 1,113,139.38 |
| 25-201126 | 06/23/2026 | 07/23/2026 | 11 | 4,295,542.50 | 4,295,542.50 |
| 25-201127 | 06/23/2026 | 07/23/2026 | 11 | 399,528.05 | 399,528.05 |
| 25-201128 | 07/07/2026 | 08/06/2026 | | 235,952.62 | 235,952.62 |
| **Total** | | | | **61,005,548.16** | **61,005,548.16** |

9:54 AM
08/08/26
Accrual Basis

# Darana Hybrid Inc
## Invoices for CTC Property LLC / MZX Tech LLC:25-202(C) Macrohard - Mempis, TN
All Transactions

| Num | Date | Due Date | Aging | Amount | Open Balance |
|---|---|---|---|---|---|
| 25-202115 | 04/07/2026 | 05/07/2026 | 88 | 618,735.00 | 618,735.00 |
| 25-202117 | 04/14/2026 | 05/14/2026 | 81 | 516,325.00 | 516,325.00 |
| 25-202118 | 04/20/2026 | 05/20/2026 | 75 | 19,655.03 | 19,655.03 |
| 25-202119 | 04/21/2026 | 05/21/2026 | 74 | 535,800.00 | 535,800.00 |
| 25-202120 | 04/27/2026 | 05/27/2026 | 68 | 37,580.90 | 37,580.90 |
| 25-202121 | 04/28/2026 | 05/28/2026 | 67 | 477,755.00 | 477,755.00 |
| 25-202122 | 05/06/2026 | 06/05/2026 | 59 | 501,885.00 | 501,885.00 |
| 25-202123R | 05/07/2026 | 06/06/2026 | 58 | 47,383.68 | 47,383.68 |
| 25-202124 | 05/14/2026 | 06/13/2026 | 51 | 105,237.40 | 105,237.40 |
| 25-202125 | 05/14/2026 | 06/13/2026 | 51 | 251,940.00 | 251,940.00 |
| 25-202126 | 05/21/2026 | 06/20/2026 | 44 | 312,740.00 | 312,740.00 |
| 25-202127 | 05/21/2026 | 06/20/2026 | 44 | 110,186.58 | 110,186.58 |
| 25-202128 | 05/27/2026 | 06/26/2026 | 38 | 15,078.36 | 15,078.36 |
| 25-202129 | 06/02/2026 | 07/02/2026 | 32 | 386,300.49 | 386,300.49 |
| 25-202130 | 06/02/2026 | 07/02/2026 | 32 | 388,835.00 | 388,835.00 |
| 25-202131 | 06/09/2026 | 07/09/2026 | 25 | 5,842.70 | 5,842.70 |
| 25-202132 | 06/09/2026 | 07/09/2026 | 25 | 418,570.00 | 418,570.00 |
| 25-202133 | 06/17/2026 | 07/17/2026 | 17 | 389,690.00 | 389,690.00 |
| 25-202134 | 06/17/2026 | 07/17/2026 | 17 | 284,912.07 | 284,912.07 |
| 25-202135 | 06/23/2026 | 07/23/2026 | 11 | 165,461.63 | 165,461.63 |
| 25-202136 | 07/07/2026 | 08/06/2026 | | 69,269.26 | 69,269.26 |
| **Total** | | | | **5,659,183.10** | **5,659,183.10** |

9:56 AM
08/03/26
Accrual Basis

# Darana Hybrid Inc
# Invoices for CTC Property LLC / MZX Tech LLC:25-203(R) Macrohard - Memphis, TN
All Transactions

| Num | Date | Due Date | Aging | Amount | Open Balance |
|---|---|---|---|---|---|
| 25-20315 | 05/14/2026 | 06/13/2026 | 51 | 1,326,613.81 | 1,326,613.81 |
| 25-20316 | 06/01/2026 | 07/01/2026 | 33 | 1,201,229.98 | 1,201,229.98 |
| 25-20317 | 06/22/2026 | 07/22/2026 | 12 | 891,125.78 | 891,125.78 |
| **Total** | | | | **3,418,969.57** | **3,418,969.57** |

9:57 AM

08/03/26

Accrual Basis

# Darana Hybrid Inc

## Invoices for CTC Property LLC / MZX Tech LLC:25-204(F) Macrohard - Memphis, TN

All Transactions

| Num | Date | Due Date | Aging | Amount | Open Balance |
|---|---|---|---|---|---|
| 25-20459 | 04/14/2026 | 05/14/2026 | 81 | 328,882.57 | 328,882.57 |
| 25-20460 | 04/20/2026 | 05/20/2026 | 75 | 460,986.16 | 460,986.16 |
| 25-20461 | 04/28/2026 | 05/28/2026 | 67 | 359,728.38 | 359,728.38 |
| 25-20462 | 05/07/2026 | 06/06/2026 | 58 | 556,693.10 | 556,693.10 |
| 25-20463 | 05/14/2026 | 06/13/2026 | 51 | 182,416.97 | 182,416.97 |
| 25-20464 | 05/21/2026 | 06/20/2026 | 44 | 427,659.51 | 427,659.51 |
| 25-20465 | 05/27/2026 | 06/26/2026 | 38 | 208,438.68 | 208,438.68 |
| 25-20466 | 06/02/2026 | 07/02/2026 | 32 | 209,774.61 | 209,774.61 |
| 25-20467 | 06/09/2026 | 07/09/2026 | 25 | 996,091.60 | 996,091.60 |
| 25-20468 | 06/17/2026 | 07/17/2026 | 17 | 354,347.80 | 354,347.80 |
| 25-20469 | 06/23/2026 | 07/23/2026 | 11 | 204,222.88 | 204,222.88 |
| 25-20470 | 07/07/2026 | 08/06/2026 | | 161,750.19 | 161,750.19 |
| **Total** | | | | **4,450,992.45** | **4,450,992.45** |

GLANKLER BROWN
ATTORNEYS

6000 Poplar Avenue, Suite 400
Memphis, Tennessee 38119
P 901.525.1322 F 901.525.2389
www.glankler.com

Jeremy G. Alpert
Direct 901.576.1791
jalpert@glankler.com

July 28, 2026

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

CTC Property, LLC
c/o United Agent Group, Inc., Registered Agent
5865 Ridgeway Center Pkwy
Ste. 395
Memphis, TN 38120

CTC Property, LLC
1450 Page Mill Road
Palo Alto, CA 94304

Re: **Darana Hybrid, Inc.**
**Notice of Failure to Pay**
**Violation of Tennessee Prompt Pay Act**
**3231 Paul R. Lowry Road, Memphis, TN**
**5420 Tulane Road, Memphis, TN**

To Whom It May Concern:

This law firm is local counsel to Darana Hybrid, Inc. ("Darana Hybrid"). CTC Property, LLC ("Owner") entered into a Master Services Agreement with Darana Hybrid for the improvement of two properties in Memphis, Tennessee – 3231 Paul R. Lowry Road and 5420 Tulane Road (collectively the "Projects"). Darana Hybrid has provided labor, materials and installation services to the Projects, yet Owner has failed and refused to compensate Darana Hybrid for services rendered. As of the date of this letter, Darana Hybrid is owed a total of $136,892,782.78 for Darana Hybrid's work on these Projects.

Furthermore, this letter shall serve as notice pursuant to the Tennessee Prompt Pay Act, Tennessee Code Annotated Section 66-34-101, *et seq.*, of Darana Hybrid's intent to seek relief under the Prompt Pay Act. Darana Hybrid furnished labor, materials and services in furtherance of improvements to the real property where the Projects are located pursuant to its written contract with Owner. Darana Hybrid first furnished labor, materials and services on March 24, 2024, and last furnished labor, materials and services on June 23, 2026. As of the date of this letter, Darana Hybrid is owed $136,892,782.78, exclusive of attorney's fees and interest. Owner's nonpayment is a violation of the Tennessee Prompt Pay Act, and you are hereby notified that Darana Hybrid intends to seek all relief provided under the Tennessee Prompt Pay Act, including attorney's fees and statutory interest as set forth in the Act, if it does not receive full payment within ten (10) days after receipt of this notice.

**EXHIBIT C**

Darana Hybrid may also, in addition to all other remedies at law or in equity, file a lawsuit for equitable relief, including injunctive relief, for continuing violations of this chapter.

Owner also owes Darana Hybrid significant additional amounts for services rendered on several projects in Mississippi. Nothing in this letter waives any rights or claims to such additional amounts.

Very truly yours,

**GLANKLER BROWN, PLLC**

Jeremy G. Alpert

JGA:dts

cc: Darana Hybrid, Inc. (via email)
Marc A. Sanchez (via email)

9589 0710 5270 4332 5891 55

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$ 5.55

Extra Services & Fees (check box, add fee as appropriate)
- [x] Return Receipt (hardcopy) $ 4.65
- [ ] Return Receipt (electronic) $
- [ ] Certified Mail Restricted Delivery $
- [ ] Adult Signature Required $
- [ ] Adult Signature Restricted Delivery $

Postage
$ .78

Total Postage and Fees
$ 10.98

MENDENHALL STATION 38117
JUL 28 2026
USPS
Postmark Here

CTC Property, LLC
c/o United Agent Group, Inc.
5865 Ridgeway Center Pkwy.
Suite 395
Memphis, TN 38120

r Instructions

9589 0710 5270 4332 5891 48

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$ 5.55

Extra Services & Fees (check box, add fee as appropriate)
- [x] Return Receipt (hardcopy) $ 4.65
- [ ] Return Receipt (electronic) $
- [ ] Certified Mail Restricted Delivery $
- [ ] Adult Signature Required $
- [ ] Adult Signature Restricted Delivery $

Postage
$ .78

Total Postage and Fees
$ 10.98

MENDENHALL STATION 38117
JUL 28 2026
USPS
Postmark Here

Sent To
CTC Property, LLC
1450 Page Mill Road
Palo Alto, CA 94304

PS F

structions

GLANKLER
BROWN
ATTORNEYS

6000 Poplar Avenue, Suite 400
Memphis, Tennessee 38119
P 901.525.1322 F 901.525.2389
www.glankler.com

Jeremy G. Alpert
Direct 901.576.1791
jalpert@glankler.com

July 29, 2026

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

MZX Tech, LLC
Attn.: Jared Birchall, Secretary
2110 Ranch Road 620 S., #341886
Lakeway, TX 78734

MZX Tech, LLC
c/o Reg. Agent, United Agent Group, Inc.
5865 Ridgeway Center Pkwy, Ste. 395
Memphis, TN 38120

MZX Tech, LLC
1450 Page Mill Road
Palo Alto, CA 94304

CTC Property LLC
1450 Page Mill Road
Palo Alto, CA 94304

Yale Riley, Trustee
6840 Carothers Parkway, Ste 200
Franklin, TN 37067

Morgan Stanley Senior Funding, Inc.
1300 Thames Street, 4th Floor
Thames Street Warf
Baltimore, MD 21231

**Re: Darana Hybrid, Inc.**
**Notice of Nonpayment: Tenn. Code Ann. § 66-11-145**
**5420 Tulane Road, Memphis, Tennessee**

To whom it may concern:

This law firm represents Darana Hybrid, Inc. ("Darana Hybrid"). Pursuant to Tennessee Code Annotated Section 66-11-145, enclosed is Darana Hybrid's Notice of Nonpayment. Darana Hybrid gives notice that it has not been paid for labor, materials, services, equipment and machinery furnished pursuant to a contract with CTC Property, LLC and/or MZX Tech, LLC. Despite demands, CTC Property and MZX Tech have failed and refused to pay Darana Hybrid $41,993,884.72 for services provided in April 2026, $41,590,680.99 for services provided in May 2026, and $34,661,594.64 for services provided in June 2026 – a total amount of $118,246,160.35 related to work, materials and services provided to improve the real property at 5420 Tulane Road. If payment of all amounts owed is not made immediately, Darana Hybrid will have no choice but to exercise all rights and remedies allowed by Tennessee law; including exercising its lien rights against real property where the services and materials were incorporated and pursing penalties for violating the Tennessee Prompt Pay Act.

In addition to Darana Hybrid's demand for payment, Darana Hybrid also hereby demands that CTC Property, LLC and/or MZX Tech, LLC immediately provide the undersigned with a copy of any and all payment and performance bonds on the project.

**EXHIBIT D**

You may contact me at the information provided with this letter if you would like to discuss. Otherwise, we hope for an immediate resolution of this matter so that litigation will not be necessary.

Very truly yours,

**GLANKLER BROWN, PLLC**

Jeremy G. Alpert

JGA:dts
Encls.
cc: Darana Hybrid, Inc. (via email – w/encls.)
Marc A. Sanchez (via email – w/encls.)

**NOTICE OF NONPAYMENT**
**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

TO: MZX Tech, LLC
Attn.: Jared Birchall, Secretary
2110 Ranch Road 620 S., #341886
Lakeway, TX 78734

TO: MZX Tech, LLC
c/o Reg. Agent, United Agent Group, Inc.
5865 Ridgeway Center Pkwy, Ste. 395
Memphis, TN 38120

TO: MZX Tech, LLC
1450 Page Mill Road
Palo Alto, CA 94304

TO: CTC Property LLC
1450 Page Mill Road
Palo Alto, CA 94304

TO: Yale Riley, Trustee
6840 Carothers Parkway, Ste 200
Franklin, TN 37067

TO: Morgan Stanley Senior Funding, Inc.
1300 Thames Street, 4th Floor
Thames Street Warf
Baltimore, MD 21231

This law firm represents Darana Hybrid, Inc. Pursuant to Tennessee Code Annotated § 66-11-145, notice is hereby given that Darana Hybrid, Inc. has not been paid for certain labor, materials, services, equipment, or machinery it supplied to CTC Property LLC and/or MZX Tech LLC for electrical and mechanical installation, related electrical and mechanical materials, supplies and equipment, and labor and manpower for such installation which was incorporated into the real property known as the "Macrohard" xAI data center and located at 5420 Tulane Road, Memphis, Tennessee 38109, and more fully described as set forth on Exhibit "A".

The amount presently due and owing for labor, materials, services, equipment, supplies and services provided in April 2026 is $41,993,884.72, provided in May 2026 is $41,590.680.99 and provided in June 2026 is $34,661,594.64, exclusive of attorney's fees and interest. The total amount owed to Darana Hybrid, Inc. as of the date of this notice is $118,246,160.35. The last day labor, materials, services, equipment, or machinery were provided in connection with the improvements was June 23, 2026.

You may send any communications regarding this matter to the following name and address:

Brandy Petrak
Senior Accountant
Darana Hybrid, Inc.
903 Belle Ave
Hamilton, OH 45015

Lienor:

Darana Hybrid, Inc.
By: Glankler Brown, PLLC
Attorneys for Darana Hybrid, Inc.

By: [signature]
Jeremy G. Alpert, Member
Date: 7/29/26

4921-2462-0994, v. 1

Exhibit A

LEGAL DESCRIPTION OF PROPOSED PARCEL 1 OF THE DRG INDUSTRIAL FUND I STATELINE, LLC, AS RECORDED PER SPECIAL WARRANTY DEED NO. 21097379 AND BEING LOCATED IN SECTION 15, TOWNSHIP 1 SOUTH, RANGE 8 WEST IN THE CITY OF MEMPHIS, SHELBY COUNTY, TENNESSEE AND SAID PROPERTY BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING at a 1/2" rebar set (found 1/2" rebar capped THY=16.60 feet East & found 1/2" rebar=0.30 feet South & 2.40 feet West) in the east existing right-of-way of Tulane Road (public paved road, 50 feet wide), said point being approximately 1159.14 feet north of and 25 feet east of the Southwest corner of Section 15-Township 1 South, Range 8 West which is located at the intersection of Tulane Road and Stateline Road, and said point of commencement being in the locally accepted State Line between Tennessee and Mississippi, thence following along the locally accepted State Line, North 87 degrees 36 minutes 18 seconds East – 29.00 feet to a point in the proposed east line of Tulane Road being the southwest corner of proposed Parcel 1; thence, leaving the locally accepted State Line and following along the proposed east right-of-way of Tulane Road being the west line of proposed Parcel 1, North 02 degrees 17 minutes 11 seconds East for 100.00 feet to a point being the southwest corner of proposed Parcel 3; thence, following along the proposed east right-of-way of Tulane Road being the west line of proposed Parcel 3, North 02 degrees 17 minutes 11 seconds East – 1682.71 feet to a point in the south line of the Mt. Joyner Baptist Church cemetery property per Deed in Book 78-Page 25, being a northwest corner of Parcel 3; thence leaving said point in the proposed east right-of-way of Tulane Road and following along the south line of the Mt. Joyner Baptist Church cemetery property being a north line of proposed Parcel 3, North 88 degrees 25 minutes 01 seconds East – 155.51 feet to a found 1/2" rebar at the southeast corner of said cemetery property being a corner for proposed Parcel 3; thence following along the east line of said cemetery property being a west line of proposed Parcel 3, North 02 degrees 20 minutes 15 seconds East – 421.84 feet to a found 1/2" rebar at the northeast corner of said cemetery property being the northwest corner of proposed Parcel 3 and being in a south line of proposed Parcel 2; thence South 88 degrees 25 minutes 01 seconds West along the north line of said cemetery and the south line of proposed Parcel 2 – 155.88 feet to a point in the proposed east right-of-way of Tulane Road, said point being a southwest corner of proposed Parcel 2; thence, leaving said corner and following the proposed east right-of-way of Tulane Road, North 02 degrees 17 minutes 11 seconds East – 504.24 feet to the northwest corner of said proposed Parcel 2 in the south line of the City of Memphis Board of Education property per Warranty Deed no. AS9854; thence leaving the northwest corner and following the north line of proposed Parcel 2 and the south line of the City of Memphis Board of Education property, South 87 degrees 42 minutes 01 seconds East – 1087.95 feet to a found iron pin at the southeast corner of the City of Memphis Board of Education property and the southwest corner of the Ozier Parkway Logistics, L.P. property per Quit Claim Deed No. 14042899; thence following along the south line of the Ozier Parkway Logistics, L.P. property and the north line of proposed Parcel 2, South 87 degrees 45 minutes 36 seconds East – 734.90 feet to a point being the northeast corner of said proposed Parcel 2 and being the POINT OF BEGINNING for proposed Parcel 1

**said point being more particularly located at Tennessee State Plane Coordinates (NAD 83) of 268496.41 feet North and 759792.43 feet East;**

- **thence South 87 degrees 45 minutes 36 seconds East – 809.15 feet along the north line of proposed Parcel 1 being also the south line of the Ozier Parkway Logistics, L.P. property to a set 1/2" rebar being the northeast corner of said proposed Parcel 1 and the southeast corner of Ozier Parkway Logistics L.P. and in the west right-of-way of the Illinois Central Railroad;**
- **thence South 13 degrees 25 minutes 41 seconds East – 2821.66 feet along the west right-of-way of the Illinois Central Railroad and the east line of proposed Parcel 1 to a point in the locally accepted Tennessee-Mississippi State line;**
- **thence following along the locally accepted Tennessee-Mississippi State line being the south line of proposed Parcel 1, North 87 degrees 36 minutes 18 seconds West – 3396.25 feet to a point in the proposed east right-of-way of Tulane Road;**
- **thence North 02 degrees 17 minutes 11 seconds East – 100.00 feet along the east proposed east right-of-way of Tulane Road being the west line of proposed Parcel 1 to a point being the southwest corner of proposed Parcel 3 and a northwest corner of said proposed Parcel 1;**
- **thence South 87 degrees 36 minutes 18 seconds East along a north line of proposed Parcel 1 and along the south line of proposed Parcel 3 and passing a point at 546.87 feet being the southeast corner of said proposed Parcel 3 and the southwest corner of proposed Parcel 2 continuing along the south line of proposed Parcel 2 a total distance of 1817.90 feet to a point being the southwest corner of proposed Parcel 2 and a corner for proposed Parcel 1;**
- **thence North 02 degrees 23 minutes 42 seconds East along the line dividing proposed Parcels 1 and 2 a distance of 2612.55 feet to the POINT OF BEGINNING.**

**Note: All documents referenced herein are recorded in the Shelby County Register's Office in Memphis, Tennessee.**

**Containing 3,421,865 square feet or 78.555 acres, more or less.**

Being the same property conveyed to DRG MCRE SOUTHAVEN II VENTURE, LP, a Delaware limited partnership, by deed of record in Instrument No. 22069099, in the Register's Office of Shelby County, Tennessee.

9589 0710 5270 4332 5893 15

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee $ 5.55

Extra Services & Fees (check box, add fee as appropriate)
- [x] Return Receipt (hardcopy) $ 4.65
- [ ] Return Receipt (electronic) $
- [ ] Certified Mail Restricted Delivery $
- [ ] Adult Signature Required $
- [ ] Adult Signature Restricted Delivery $

Postage $ 2.27

Total Postage and Fees $ 12.47

Postmark Here: MENDENHALL STATION 38117 — JUL 31 2026 — USPS

Yale Riley, Trustee
6840 Carothers Parkway
Suite 200
Franklin, TN 37067

for Instructions

---

9589 0710 5270 4332 5893 08

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee $ 5.55

Extra Services & Fees (check box, add fee as appropriate)
- [x] Return Receipt (hardcopy) $ 4.65
- [ ] Return Receipt (electronic) $
- [ ] Certified Mail Restricted Delivery $
- [ ] Adult Signature Required $
- [ ] Adult Signature Restricted Delivery $

Postage $ 2.27

Total Postage and Fees $ 12.47

Postmark Here: JUL 31 2026 — USPS

MZX Tech, LLC
1450 Page Mill Road
Palo Alto, CA 94304

for Instructions

---

9589 0710 5270 4332 5893 39

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee $ 5.55

Extra Services & Fees (check box, add fee as appropriate)
- [ ] Return Receipt (hardcopy) $ 4.65
- [ ] Return Receipt (electronic) $
- [ ] Certified Mail Restricted Delivery $
- [ ] Adult Signature Required $
- [ ] Adult Signature Restricted Delivery $

Postage $ 2.27

Total Postage and Fees $ 12.47

Postmark Here: MENDENHALL STATION 38117 — JUL 31 2026 — USPS

Morgan Stanley Senior Funding, Inc.
1300 Thames Street, 4th Floor
Thames Street Warf
Baltimore, MD 21231

for Instructions

---

9589 0710 5270 4332 5893 22

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee $ 5.55

Extra Services & Fees (check box, add fee as appropriate)
- [x] Return Receipt (hardcopy) $ 4.65
- [ ] Return Receipt (electronic) $
- [ ] Certified Mail Restricted Delivery $
- [ ] Adult Signature Required $
- [ ] Adult Signature Restricted Delivery $

Postage $ 2.27

Total Postage and Fees $ 12.47

Postmark Here: MENDENHALL STATION 38117 — JUL 31 2026 — USPS

MZX Tech, LLC
c/o R.A. United Agent Group, Inc.
5865 Ridgeway Center Pkwy.
Suite 395
Memphis, TN 38120

for Instructions

---

9589 0710 5270 4332 5892 85

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee $ 5.55

Extra Services & Fees (check box, add fee as appropriate)
- [x] Return Receipt (hardcopy) $ 4.65
- [ ] Return Receipt (electronic) $
- [ ] Certified Mail Restricted Delivery $
- [ ] Adult Signature Required $
- [ ] Adult Signature Restricted Delivery $

Postage $ 2.27

Total Postage and Fees $ 12.47

Postmark Here: MENDENHALL STATION 38117 — JUL 31 2026 — USPS

CTC Property, LLC
1450 Page Mill Road
Palo Alto, CA 94304

for Instructions

---

9589 0710 5270 4332 5892 92

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee $ 5.55

Extra Services & Fees (check box, add fee as appropriate)
- [x] Return Receipt (hardcopy) $ 4.65
- [ ] Return Receipt (electronic) $
- [ ] Certified Mail Restricted Delivery $
- [ ] Adult Signature Required $
- [ ] Adult Signature Restricted Delivery $

Postage $ 2.27

Total Postage and Fees $ 12.49

Postmark Here: MENDENHALL STATION 38117 — JUL 31 2026 — USPS

MZX Tech LLC
Attn.: Jared Birchall, Sect.
2110 Ranch Road 620 S.,
#341886
Lakeway, TX 78734

for Instructions

Shelby County Tennessee

***Willie F. Brooks Jr***

Shelby County Register

As evidenced by the instrument number shown below, this document has been recorded as a permanent record in the archives of the Office of the Shelby County Register.

26064556

07/30/2026 - 10:31:38 AM

| | |
|---|---|
| 5 PGS | |
| DAISY 2994694 - 26064556 | |
| VALUE | 0.00 |
| MORTGAGE TAX | 0.00 |
| TRANSFER TAX | 0.00 |
| RECORDING FEE | 25.00 |
| DP FEE | 2.00 |
| REGISTER'S FEE | 0.00 |
| TOTAL AMOUNT | 27.00 |

WILLIE F. BROOKS JR
REGISTER OF DEEDS SHELBY COUNTY TENNESSEE

**EXHIBIT E**

1075 Mullins Station, Suite W165 ~ Memphis, Tennessee 38134 (901) 222-8100

Website: www.register.shelby.tn.us Email: register@shelbycountytn.gov

Prepared By and Return To:
Jeremy G. Alpert
GLANKLER BROWN, PLLC
6000 Poplar Ave., Suite 400
Memphis, Tennessee 38119

**NOTICE OF MECHANIC'S AND MATERIALMEN'S LIEN**

TO: CTC Property, LLC
1450 Page Mill Road
Palo Alto, CA 94304

CTC Property, LLC
3231 Paul R. Lowry Road
Memphis, TN 38109

CTC Property, LLC
c/o United Agent Group, Inc., Registered Agent
5865 Ridgeway Center Pkwy, Ste 395
Memphis, TN 38120

STATE OF OHIO
COUNTY OF BUTLER

Brandy Petrak being first duly sworn, states that Darana Hybrid, Inc., a Tennessee corporation, the Lien Claimant, furnished certain material or performed certain work or labor in furtherance of improvements to the real property hereinafter described, in pursuance of a certain contract with CTC Property LLC to improve certain premises owned by CTC Property LLC located in Shelby County, Tennessee.

The first of the work or labor was performed or the first of the material, services, equipment, or machinery was furnished March 10, 2024. The last of the work or labor was performed or the last of the material, services equipment, or machinery was furnished on June 23, 2026, and there is justly and truly due Lien Claimant therefor from CTC Property LLC over and above all legal setoffs, the sum of Eighteen Million Six Hundred Forty-Six Thousand Six Hundred

Twenty-Two Dollars and 43/100 ($18,646,622.43), exclusive of interest or attorney's fees, for which amount Lien Claimant claims a lien under T.C.A. §§ 66-11-101, *et seq.* on real property, of which CTC Property LLC is the owner, which has an address of 3231 Paul R. Lowry Road, Memphis, Tennessee 38109, and which is more specifically described as follows:

See Exhibit "A".

**DARANA HYBRID, INC.**

Lienor

By: Brandy Petrak

Title: Senior Accountant

STATE OF OHIO
COUNTY OF BUTLER

Appearing before me, Brandy Petrak, having reviewed the Notice of Mechanics' and Materialmen's Lien and affirming that the information contained therein is true and correct to the best of her knowledge, information and belief and that she has the authority to sign this notice on behalf of Darana Hybrid, Inc.

Sworn to and subscribed before me on this the 29th day of July, 2026.

NOTARY PUBLIC

My Commission Expires:

3-26-2028

MORGAN MARIE LEWIS - NOTARY PUBLIC
COMM EXP: MAR 26, 2028
STATE OF OHIO

STATE OF OHIO
COUNTY OF BUTLER

Before me a notary public of the state and county mentioned, on this the 29th day of July, 2026, personally appeared Brandy Petrak, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence) and who, upon oath, acknowledged herself to be the Senior Accountant of Darana Hybrid, Inc., the within named bargainor, and that, as such Senior Accountant she executed the foregoing instrument for the purposes contained herein, by signing the name of the company by herself as such Senior Accountant.

Witness my hand and seal on this the 29th day of July, 2026.

NOTARY PUBLIC

My Commission Expires:

3-26-2028

4911-9532-3290, v. 1

MORGAN MARIE LEWIS - NOTARY PUBLIC
COMM EXP: MAR 26, 2028
STATE OF OHIO

**EXHIBIT A**

[Legal Description]

LEGAL DESCRIPTION OF THE MEMPHIS AND SHELBY COUNTY PORT COMMISSION PROPERTY AS RECORDED PER QUIT CLAIM DEED INSTRUMENT NUMBER 11090258 IN THE SHELBY COUNTY REGISTER'S OFFICE (SCRO), LESS THAT PART FOR THE WIDENING OF PAUL R. LOWRY ROAD AS RECORDED PER INSTRUMENT NUMBER 12076866 (SCRO), BEING PART OF LOTS 11, 13, AND 14 AS SHOWN ON THE PLAT OF THE ENSLEY PLANTATION OF RECORD IN PLAT BOOK 3-PAGES 59 AND 60 (SCRO), ALL LYING IN THE CITY OF MEMPHIS, SHELBY COUNTY, TENNESSEE, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A SET 1/2 INCH REBAR IN THE WESTERLY RIGHT-OF-WAY OF PAUL R. LOWRY ROAD (PUBLIC PAVED ROAD, R.O.W. VARIES, 54 FEET WEST OF CENTERLINE) AS DEDICATED PER INSTRUMENT NUMBER 12076866 (SCRO), SAID POINT BEING LOCATED 2,391.85 FEET SOUTH OF THE TANGENT INTERSECTION OF THE NORTHWARD EXTENSION OF THE WEST RIGHT-OF-WAY OF PAUL R. LOWRY ROAD WITH THE WESTWARD EXTENSION OF THE CENTERLINE OF RIVERPORT ROAD, SAID POINT OF BEGINNING BEING FURTHER LOCATED AT TENNESSEE STATE PLANE COORDINATES OF 291700.72 FEET NORTH AND 726126.01 FEET EAST (NAD 83) AND SAID POINT OF BEGINNING ALSO BEING IN THE SOUTH LINE OF THE MEMPHIS, LIGHT, GAS, AND WATER PROPERTY AS RECORDED PER SPECIAL WARRANTY DEED NO. HB2558 (SCRO); THENCE FOLLOWING PARALLEL TO AND 54.00 FEET WEST OF THE CENTERLINE OF PAUL R. LOWRY ROAD AS FOLLOWS: SOUTH 07 DEGREES 54 MINUTES 21 SECONDS WEST - 2,984.67 FEET ALONG THE WESTERLY RIGHT-OF-WAY OF PAUL R. LOWRY ROAD TO A SET 1/2 INCH REBAR ON A POINT OF CURVE TO THE LEFT HAVING A RADIUS OF 1,454.00 FEET AND A CENTRAL ANGLE OF 10 DEGREES 08 MINUTES 30 SECONDS; THENCE SOUTHWESTWARDLY ALONG THE ARC A DISTANCE OF 257.37 FEET (CHORD BEARING AND DISTANCE OF SOUTH 02 DEGREES 50 MINUTES 06 SECONDS WEST-257.03 FEET) TO A SET 1/2 INCH REBAR; THENCE LEAVING SAID WESTERLY RIGHT-OF-WAY OF PAUL R. LOWRY ROAD, NORTH 64 DEGREES 53 MINUTES 58 SECONDS WEST - 1,297.18 FEET TO A FOUND 1/2 INCH REBAR; THENCE NORTH 54 DEGREES 21 MINUTES 03 SECONDS WEST - 1,224.94 FEET TO A FOUND 1/2 INCH REBAR ON THE NORTH LINE OF A FORMER 400 FOOT TVA EASEMENT NOW OWNED BY THE CITY OF MEMPHIS, TENNESSEE AND SHELBY COUNTY, TENNESSEE PER INSTRUMENT G52092 (SCRO); THENCE NORTH 64 DEGREES 47 MINUTES 32 SECONDS WEST, A DISTANCE OF 174.75 FEET ALONG THE NORTHERLY LINE OF SAID FORMER TVA EASEMENT TO A FOUND 1/2" REBAR; THENCE LEAVING THE NORTHERLY LINE OF SAID FORMER TVA EASEMENT, NORTH 34 DEGREES 20 MINUTES 39 SECONDS WEST, A DISTANCE OF 708.25 FEET TO A FOUND 1/2" REBAR; THENCE NORTH 11 DEGREES 45 MINUTES 28 SECONDS EAST, A DISTANCE OF 639.44 FEET TO A FOUND 1/2" REBAR; THENCE NORTH 22 DEGREES 50 MINUTES 12 SECONDS EAST, A DISTANCE OF 1,475.47 FEET TO A FOUND 1/2" REBAR; THENCE NORTH 14 DEGREES 31 MINUTES 04 SECONDS EAST, A DISTANCE OF 314.63 FEET TO A FOUND 1/2" REBAR; THENCE NORTH 22 DEGREES 58 MINUTES 07 SECONDS EAST, A DISTANCE OF 186.15 FEET TO A FOUND 1/2" REBAR; THENCE NORTH 21 DEGREES 00 MINUTES 58 SECONDS EAST, A DISTANCE OF 451.90 FEET TO A FOUND 1/2" REBAR IN THE SOUTH LINE OF THE CITY OF MEMPHIS AND COUNTY OF SHELBY PROPERTY AS RECORDED PER DEED IN BOOK 3937-PAGE 205 (PART OF PARCEL 3)(SCRO); THENCE SOUTH 82 DEGREES 05 MINUTES 39 SECONDS EAST, A DISTANCE OF 1,076.48 FEET ALONG THE SOUTHERLY LINE OF SAID CITY OF MEMPHIS AND COUNTY OF SHELBY PROPERTY AS RECORDED PER DEED IN BOOK 3937-PAGE 205 (PART OF PARCEL 3)(SCRO) TO A FOUND 1/2" REBAR; THENCE LEAVING SAID SOUTHERLY LINE, SOUTH 07 DEGREES 59 MINUTES 04 SECONDS WEST, A DISTANCE OF 935.29 FEET TO A FOUND 1/2" REBAR; THENCE SOUTH 82 DEGREES 05 MINUTES 39 SECONDS EAST, A DISTANCE OF 769.49 FEET TO A FOUND 1/2" REBAR ON THE NORTHWEST CORNER OF THE AFORESAID MEMPHIS,

LIGHT, GAS, AND WATER (MLGW) PROPERTY; THENCE SOUTH 07 DEGREES 54 MINUTES 21 SECONDS WEST ALONG THE WEST LINE OF THE MLGW PROPERTY, A DISTANCE OF 350.00 FEET TO A FOUND 1/2" REBAR ON THE SOUTHWEST CORNER OF SAID MEMPHIS, LIGHT, GAS, AND WATER PROPERTY; THENCE SOUTH 82 DEGREES 05 MINUTES 39 SECONDS EAST - 488.74 FEET ALONG THE SOUTH LINE OF THE MEMPHIS, LIGHT, GAS, AND WATER PROPERTY TO THE POINT OF BEGINNING.
CONTAINING 9,431,225 SQUARE FEET OR 216.511 ACRES, MORE OR LESS.

Being the same property conveyed to Grantor, by virtue of Special Warranty Deed recorded on January 9, 2024, in Instrument No. 24002305 in the Register's Office for Shelby County, Tennessee; Quitclaim Deed recorded on May 28, 2024, in Instrument No. 24043242 in said Register's Office; and Quitclaim Deed recorded on May 28, 2024, in Instrument No. 24043243 in said Register's Office

PIN NO: 050101 00077 and 050101 00076

STREET ADDRESS: 3231 Paul R. Lowry Road, Memphis, TN 38109

# Shelby County Tennessee

## *Willie F. Brooks Jr*

Shelby County Register

As evidenced by the instrument number shown below, this document has been recorded as a permanent record in the archives of the Office of the Shelby County Register.

26064953

07/31/2026 - 10:22:38 AM

| | |
|---|---|
| 5 PGS | |
| DAISY 2994938 - 26064953 | |
| VALUE | 0.00 |
| MORTGAGE TAX | 0.00 |
| TRANSFER TAX | 0.00 |
| RECORDING FEE | 25.00 |
| DP FEE | 2.00 |
| REGISTER'S FEE | 0.00 |
| TOTAL AMOUNT | 27.00 |

WILLIE F. BROOKS JR
REGISTER OF DEEDS SHELBY COUNTY TENNESSEE

**EXHIBIT F**

Prepared By and Return To:
Jeremy G. Alpert
GLANKLER BROWN, PLLC
6000 Poplar Ave., Suite 400
Memphis, Tennessee 38119

**NOTICE OF MECHANIC'S AND MATERIALMEN'S LIEN**

TO: MZX Tech, LLC
Attn.: Jared Birchall, Secretary
2110 Ranch Road 620 S., #341886
Lakeway, TX 78734

TO: MZX Tech, LLC
c/o Reg. Agent, United Agent Group, Inc.
5865 Ridgeway Center Pkwy, Ste. 395
Memphis, TN 38120

TO: MZX Tech, LLC
1450 Page Mill Road
Palo Alto, CA 94304

TO: CTC Property LLC
1450 Page Mill Road
Palo Alto, CA 94304

TO: Yale Riley, Trustee
6840 Carothers Parkway, Ste 200
Franklin, TN 37067

TO: Morgan Stanley Senior Funding, Inc.
1300 Thames Street, 4th Floor
Thames Street Warf
Baltimore, MD 21231

STATE OF OHIO
COUNTY OF BUTLER

Brandy Petrak being first duly sworn, states that Darana Hybrid, Inc., a Tennessee corporation, the Lien Claimant, furnished certain material or performed certain work or labor in furtherance of improvements to the real property hereinafter described, in pursuance of a certain contract with CTC Property LLC and/or MZX Tech LLC to improve certain premises owned by MZX Tech LLC located in Shelby County, Tennessee.

The first of the work or labor was performed or the first of the material, services, equipment, or machinery was furnished February 27, 2025. The last of the work or labor was performed or the last of the material, services equipment, or machinery was furnished on June 23, 2026, and there is justly and truly due Lien Claimant therefor from CTC Property LLC and/or MZX Tech LLC over and above all legal setoffs, the sum of One Hundred Eighteen Million Two

Hundred Forty-Six Thousand One Hundred Sixty Dollars and 35/100 ($118,246,160.35), exclusive of interest or attorney's fees, for which amount Lien Claimant claims a lien under T.C.A. §§ 66-11-101, *et seq.* on real property, of which MZX Tech LLC is the current owner, which has an address of 5420 Tulane Road, Memphis, Tennessee 38109, and which is more specifically described as follows:

See Exhibit "A".

**DARANA HYBRID, INC.**

Lienor

By: Brandy Petrak

Title: Senior Accountant

STATE OF OHIO
COUNTY OF BUTLER

Appearing before me, Brandy Petrak, having reviewed the Notice of Mechanics' and Materialmen's Lien and affirming that the information contained therein is true and correct to the best of her knowledge, information and belief and that she has the authority to sign this notice on behalf of Darana Hybrid, Inc.

Sworn to and subscribed before me on this the 30th day of July, 2026.

NOTARY PUBLIC

My Commission Expires:

3-26-2028

MORGAN MARIE LEWIS - NOTARY PUBLIC
COMM EXP: MAR 26, 2028
STATE OF OHIO

STATE OF OHIO
COUNTY OF BUTLER

Before me a notary public of the state and county mentioned, on this the 30th day of July, 2026, personally appeared Brandy Petrak, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence) and who, upon oath, acknowledged herself to be the Senior Accountant of Darana Hybrid, Inc., the within named bargainor, and that, as such Senior Accountant she executed the foregoing instrument for the purposes contained herein, by signing the name of the company by herself as such Senior Accountant.

Witness my hand and seal on this the 30th day of July, 2026.

NOTARY PUBLIC

My Commission Expires:

3-26-2028

4924-6370-5026, v. 1

MORGAN MARIE LEWIS - NOTARY PUBLIC
COMM EXP: MAR 26, 2028
STATE OF OHIO

## Exhibit A

LEGAL DESCRIPTION OF PROPOSED PARCEL 1 OF THE DRG INDUSTRIAL FUND I STATELINE, LLC, AS RECORDED PER SPECIAL WARRANTY DEED NO. 21097379 AND BEING LOCATED IN SECTION 15, TOWNSHIP 1 SOUTH, RANGE 8 WEST IN THE CITY OF MEMPHIS, SHELBY COUNTY, TENNESSEE AND SAID PROPERTY BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING at a 1/2" rebar set (found 1/2" rebar capped THY=16.60 feet East & found 1/2" rebar=0.30 feet South & 2.40 feet West) in the east existing right-of-way of Tulane Road (public paved road, 50 feet wide), said point being approximately 1159.14 feet north of and 25 feet east of the Southwest corner of Section 15-Township 1 South, Range 8 West which is located at the intersection of Tulane Road and Stateline Road, and said point of commencement being in the locally accepted State Line between Tennessee and Mississippi, thence following along the locally accepted State Line, North 87 degrees 36 minutes 18 seconds East – 29.00 feet to a point in the proposed east line of Tulane Road being the southwest corner of proposed Parcel 1; thence, leaving the locally accepted State Line and following along the proposed east right-of-way of Tulane Road being the west line of proposed Parcel 1, North 02 degrees 17 minutes 11 seconds East for 100.00 feet to a point being the southwest corner of proposed Parcel 3; thence, following along the proposed east right-of-way of Tulane Road being the west line of proposed Parcel 3, North 02 degrees 17 minutes 11 seconds East – 1682.71 feet to a point in the south line of the Mt. Joyner Baptist Church cemetery property per Deed in Book 78-Page 25, being a northwest corner of Parcel 3; thence leaving said point in the proposed east right-of-way of Tulane Road and following along the south line of the Mt. Joyner Baptist Church cemetery property being a north line of proposed Parcel 3, North 88 degrees 25 minutes 01 seconds East – 155.51 feet to a found 1/2" rebar at the southeast corner of said cemetery property being a corner for proposed Parcel 3; thence following along the east line of said cemetery property being a west line of proposed Parcel 3, North 02 degrees 20 minutes 15 seconds East – 421.84 feet to a found 1/2" rebar at the northeast corner of said cemetery property being the northwest corner of proposed Parcel 3 and being in a south line of proposed Parcel 2; thence South 88 degrees 25 minutes 01 seconds West along the north line of said cemetery and the south line of proposed Parcel 2 – 155.88 feet to a point in the proposed east right-of-way of Tulane Road, said point being a southwest corner of proposed Parcel 2; thence, leaving said corner and following the proposed east right-of-way of Tulane Road, North 02 degrees 17 minutes 11 seconds East – 504.24 feet to the northwest corner of said proposed Parcel 2 in the south line of the City of Memphis Board of Education property per Warranty Deed no. AS9854; thence leaving the northwest corner and following the north line of proposed Parcel 2 and the south line of the City of Memphis Board of Education property, South 87 degrees 42 minutes 01 seconds East – 1087.95 feet to a found iron pin at the southeast corner of the City of Memphis Board of Education property and the southwest corner of the Ozier Parkway Logistics, L.P. property per Quit Claim Deed No. 14042899; thence following along the south line of the Ozier Parkway Logistics, L.P. property and the north line of proposed Parcel 2, South 87 degrees 45 minutes 36 seconds East – 734.90 feet to a point being the northeast corner of said proposed Parcel 2 and being the POINT OF BEGINNING for proposed Parcel 1

**said point being more particularly located at Tennessee State Plane Coordinates (NAD 83) of 268496.41 feet North and 759792.43 feet East;**

- **thence South 87 degrees 45 minutes 36 seconds East – 809.15 feet along the north line of proposed Parcel 1 being also the south line of the Ozier Parkway Logistics, L.P. property to a set 1/2" rebar being the northeast corner of said proposed Parcel 1 and the southeast corner of Ozier Parkway Logistics L.P. and in the west right-of-way of the Illinois Central Railroad;**
- **thence South 13 degrees 25 minutes 41 seconds East – 2821.66 feet along the west right-of-way of the Illinois Central Railroad and the east line of proposed Parcel 1 to a point in the locally accepted Tennessee-Mississippi State line;**
- **thence following along the locally accepted Tennessee-Mississippi State line being the south line of proposed Parcel 1, North 87 degrees 36 minutes 18 seconds West – 3396.25 feet to a point in the proposed east right-of-way of Tulane Road;**
- **thence North 02 degrees 17 minutes 11 seconds East – 100.00 feet along the east proposed east right-of-way of Tulane Road being the west line of proposed Parcel 1 to a point being the southwest corner of proposed Parcel 3 and a northwest corner of said proposed Parcel 1;**
- **thence South 87 degrees 36 minutes 18 seconds East along a north line of proposed Parcel 1 and along the south line of proposed Parcel 3 and passing a point at 546.87 feet being the southeast corner of said proposed Parcel 3 and the southwest corner of proposed Parcel 2 continuing along the south line of proposed Parcel 2 a total distance of 1817.90 feet to a point being the southwest corner of proposed Parcel 2 and a corner for proposed Parcel 1;**
- **thence North 02 degrees 23 minutes 42 seconds East along the line dividing proposed Parcels 1 and 2 a distance of 2612.55 feet to the POINT OF BEGINNING.**

**Note: All documents referenced herein are recorded in the Shelby County Register's Office in Memphis, Tennessee.**

**Containing 3,421,865 square feet or 78.555 acres, more or less.**

Being the same property conveyed to DRG MCRE SOUTHAVEN II VENTURE, LP, a Delaware limited partnership, by deed of record in Instrument No. 22069099, in the Register's Office of Shelby County, Tennessee.